[L.A. 31680. Dec. 22, 1983.]

JAMES MORAN, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
BARBARA RICCARDO, Real Party in Interest.

LUTHERAN HOSPITAL SOCIETY OF SOUTHERN CALIFORNIA,
Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
BARBARA RICCARDO, Real Party in Interest.

KARL STORZ, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
BARBARA RICCARDO, Real Party in Interest.

**COUNSEL**

Patterson, Ritner, Lockwood, Zanghi & Gartner, Jeralyn Keller, John M. Coleman, Rushfeldt, Shelley & McCurdy, Horvitz & Greines, Irving H. Greines, Alan G. Martin, Barry R. Levy, Kent L. Richland, Billips & Desimone, John F. Maloney and Salvatore Desimone for Petitioners.

No appearance for Respondent.

Iverson, Yoakum, Papiano & Hatch, Neil Papiano, John A. Slezak and Arnold D. Larson for Real Party in Interest.

Leonard Sacks, Wylie Aitken, Glen T. Bashore, Ray Bourhis, Richard D. Bridgman, Edwin Train Caldwell, Robert E. Cartwright, David S. Casey, Jr., Victoria De Goff, Harry J. Delizonna, Douglas K. De Vries, Sanford M. Gage, Ian Herzog, G. Dana Hobart, Stanley K. Jacobs, Harvey R. Levine, John C. McCarthy, Timothy W. Peach, Roberta Ritter, Arne

Werchick, Stephen I. Zetterberg, Paul A. Eisler and James R. McGrath as Amici Curiae on behalf of Real Party in Interest.

---

**OPINION**

**BIRD, C. J.**—If a defendant requests a trial de novo following arbitration, and, due to court error, five years elapse before the trial de novo commences, may the action be dismissed for failure to comport with the five-year limitation of Code of Civil Procedure section 583?[1]

I.

The facts are not in dispute.

On March 6, 1975, real party in interest, Barbara Riccardo, filed an action for medical malpractice against petitioners, Dr. James Moran and the Santa Monica Hospital Medical Center (Hospital) in Los Angeles County Superior Court. During the next two years, the parties conducted extensive discovery proceedings which included interrogatories, requests for admissions and depositions.

On February 2, 1977, the at-issue memorandum was filed.[2] Preparation of the case continued and on August 3, 1979, the certificate of readiness was filed, as required by the local rules.[3] Subsequently, on October 11th, the court held a trial setting conference. At that time, the judge set a mandatory settlement conference for January 25, 1980, and a trial date of February 11, 1980.

---

[1]Code of Civil Procedure section 583, subdivision (b) provides: "Any action heretofore or hereafter commenced shall be dismissed by the court in which the same shall have been commenced or to which it may be transferred on motion of the defendant, after due notice to plaintiff or by the court upon its own motion, unless such action is brought to trial within five years after the plaintiff has filed his action, except where the parties have filed a stipulation in writing that the time may be extended."

This statute will hereafter be referred to as section 583(b). All references are to the Code of Civil Procedure unless otherwise stated.

[2]California Rules of Court, rule 206(a)(3) provides for the filing of an at-issue memorandum once "all essential parties have been served with process or appeared and . . . the case is at issue as to those parties. . . ." This rule also provides that filing an at-issue memorandum is a prerequisite to placing a case on the civil active list and to setting it for pretrial conference, trial setting conference, or trial.

[3]Under California Rules of Court, rule 221(a), in counties in which the courts require the filing of a certificate of readiness, the certificate must be filed before a case may be set for pretrial or trial setting conference or trial.

At the settlement conference, the trial court determined that the amount in controversy did not exceed $15,000. With 17 days remaining until the scheduled start of trial, the court vacated the trial date and referred the case to arbitration. (See § 1141.11, subd. (a).[4]) ■ ■ ■ ■ When plaintiff's attorneys expressed concern that the five-year period for bringing the case to trial would expire, the trial judge assured them that the statute would be tolled during arbitration (see § 1141.17[5]) and that the case would be

[4]Section 1141.11, subdivision (a) provides as follows: "In each superior court with 10 or more judges, all at-issue civil actions pending on or filed after the operative date of this chapter shall be submitted to arbitration, by the presiding judge or the judge designated, under this chapter if the amount in controversy in the opinion of the court will not exceed fifteen thousand dollars ($15,000) for each plaintiff, which decision shall not be appealable."

[5]Section 1141.17 reads as follows: "Submission of an action to arbitration pursuant to this chapter [ch. 2.5—Judicial Arbitration] shall not toll the running of the time periods contained in Section 583 as to actions filed on or after the operative date of this chapter [July 1, 1979]. Submission to arbitration pursuant to a court order within six months of the expiration of the statutory period shall toll the running of such period until the filing of an arbitration award." The provision does not specify whether submission to arbitration within six months of the statutory deadlines tolls the section 583 time periods for actions filed *before* July 1, 1979. Here, the trial court assumed that the tolling provision of section 1141.17 was applicable to Riccardo's case even though her action was filed well before that date.

Although section 1141.17 is silent on this issue, another provision in chapter 2.5 indicates that the trial court's assumption was reasonable. Section 1141.11, subdivision (a) (see *ante,* fn. 4) provides that "all at-issue civil actions *pending on* or filed after the operative date of this chapter shall be submitted to arbitration . . . under this chapter" if the court determines that the amount in controversy will not exceed $15,000. (Italics added.) Since actions filed *before* July 1, 1979, but still pending on that date are subject to the mandatory arbitration provisions of chapter 2.5, it follows that the tolling provision contained therein is also applicable to those actions. (See *Crawford* v. *Hoffman* (1982) 132 Cal.App.3d 1015, 1017-1019 [183 Cal.Rptr. 599].)

"Submission of an action to arbitration" is not defined in section 1141.17 or any other provision in chapter 2.5. For purposes of the tolling provision of section 1141.17, "submission to arbitration" could be construed to refer only to the date on which the court ordered the case to arbitration. However, a more reasonable interpretation would consider a case "submitted" if it is assigned to arbitration *or is still pending in arbitration* within the six months prior to the expiration of the section 583 time period. As the Court of Appeal noted in *Crawford* v. *Hoffman, supra,* 132 Cal.App.3d at page 1019, "the *date of the order* submitting the case to arbitration . . . is logically inconsequential while the fact of pending arbitration is logically the consequential concern. Had the Legislature intended the date of the order of submission to be the determinative fact, it certainly could have, and would have, said so." (Italics in original.)

This interpretation of the phrase "submission to arbitration" was also adopted by the Judicial Council when it fulfilled its statutory duty to "provide by rule for practice and procedure for all actions submitted to arbitration under [chapter 2.5]." (§ 1141.14.) Rule 1601(d) of the California Rules of Court was promulgated pursuant to that mandate. It provides: "When pursuant to subdivision (c) [mandatory arbitration] an action is placed or remains on the arbitration hearing list more than four years and six months after the date the action was filed, the time during which the action is pending on the arbitration hearing list shall not be included in computing the time periods specified in section 583 . . . ."

The definition of "submission to arbitration" adopted by both the Court of Appeal in *Crawford* and the Judicial Council is consistent with the purposes of the arbitration provisions, and is adopted by this court. Therefore, if an action is referred to arbitration or if arbitration is pending during the six-month period preceding a section 583 deadline, the

restored to the trial calendar should any party request a trial de novo following arbitration (see § 1141.20.[6])

The case went to arbitration and after a full hearing in February and March of 1981, the arbitrator awarded Riccardo $12,000 on her claims against Moran. The arbitrator found against Riccardo as to the other defendants. When the arbitration award was filed on March 17, 1981, the limitations period provided by section 583(b) again commenced to run. At that time 41 days remained before expiration of the 5-year period. On April 3d, 24 days before the expiration of the 5-year period, Moran filed a request for a trial de novo.

---

tolling provision of section 1141.17 is applicable.

The correct definition of the phrase, "pursuant to a court order," has also created some confusion in the Courts of Appeal. In *Fluor Drilling Service, Inc.* v. *Superior Court* (1982) 135 Cal.App.3d 1009, 1011-1012 [186 Cal.Rptr. 9], the court concluded that submission of a case to arbitration at the plaintiff's election (see Cal. Rules of Court, rule 1600(b)) is "court-ordered." (See also *Castorena* v. *Superior Court* (1982) 135 Cal.App.3d 1014, 1017 [186 Cal.Rptr. 14].) However, other courts have reached a contrary conclusion, holding that the tolling provision of section 1141.17 applies only to "compulsory" arbitration (see § 1141.11, *ante*, fn. 4) and not to arbitration entered into by stipulation of the parties or at the election of the plaintiff. (*Davenport* v. *Vido Artukovich & Son, Inc.* (1983) 141 Cal.App.3d 60, 64-66 [190 Cal.Rptr. 64]; *Taylor* v. *County of San Bernardino* (1983) 143 Cal.App.3d 42, 45-47 [191 Cal.Rptr. 518].)

The position adopted by the courts in *Davenport* and *Taylor* is supported by sound reasoning. "In the instance of compulsory arbitration, it is not possible to insure that the court will order the case assigned to arbitration sufficiently early so that it will be arbitrated before the expiration of the section 583 statutory periods. Hence there is the need for a tolling provision. On the other hand, the timing of initiating arbitration through the consensual modes is, of course, within the control of the litigants and hence does not require the same tolling protection as in the case of compulsory arbitration.

"Obviously, an action entering arbitration after years of litigation ordinarily has incurred substantially more expense and labor than a newly filed case; a major purpose of arbitration is to avoid such labor and expense. Accordingly, it would seem unwise policy to encourage a delay in commencement of arbitration by permitting a plaintiff (or cross-complainant) to wait until the eleventh hour in the statutory life of an action before instituting arbitration by unilateral election while enjoying the protection of the tolling of the diligent prosecution statute." (*Davenport, supra,* 141 Cal.App.3d at pp. 64-65, citations & fns. omitted.)

Rule 1601(d) of the California Rules of Court also suggests that section 1141.17's tolling provision should apply only to those cases mandatorily referred to arbitration. As the *Davenport* court noted, rule 1601(d) expressly allows tolling of the section 583 time periods for cases brought to arbitration "pursuant to subdivision (c)." (141 Cal.App.3d at p. 66.) Subdivision (c) of rule 1601 specifically excludes cases which have been referred to arbitration pursuant to "a stipulation or a request by plaintiff to submit to arbitration . . . ." This reasoning is persuasive.

Clearly, the tolling provision of section 1141.17 applies only to cases that are mandatorily submitted to arbitration pursuant to section 1141.11.

[6]Section 1141.20 reads as follows: "An arbitration award shall be final if a request for a de novo trial is not filed within 20 days after the date the arbitrator files the award with the court. Any party may elect to have a de novo trial, by court or jury, both as to law and facts. Such trial shall be calendared, insofar as possible, so that the trial shall be given the same place on the active list as it had prior to arbitration, or shall receive civil priority on the next setting calendar." (See also Cal. Rules of Court, rule 1616 which implements § 1141.20.)

Upon receipt of a copy of Moran's request, Riccardo's attorneys contacted the superior court clerk's office by telephone. He requested that the case be reset for trial and given the same position on the trial calendar it had enjoyed prior to being referred to arbitration. (See § 1141.20, *ante,* fn. 6.) The clerk's office assured the attorneys that the case would be reset within the five-year period. Although follow-up calls by Riccardo's attorneys produced the same assurances, the clerk's office sent the case file to the basement for storage.

The parties took no further action until August 12, 1981, when one of the defendants filed a motion to dismiss for violation of the five-year rule. The next day the trial court ordered a new trial setting conference to be held on September 22d. On August 28th, the Hospital filed its own section 583(b) motion to dismiss in which Moran subsequently joined.

On September 3, 1981, Riccardo opposed the motions to dismiss and moved to have the case specially set for trial or, alternatively, for judgment on the arbitration award. At this point, 129 days had elapsed since expiration of the 5-year period.

The motions to dismiss were heard and denied on September 18th, on the grounds that Riccardo had made a timely request for resetting following Moran's request for a trial de novo and that the fault in not resetting the case lay with the court clerk. The judge denied Riccardo's motion to set the case for trial on the ground that his department was not the proper one in which to file such a request.

Riccardo filed a new motion to specially set in the proper department which was heard on September 28, 1981. The motion was granted and the case was calendared for trial on October 14, 1981.

Before the trial commenced, defendants Moran, Storz, and the Hospital filed petitions for writ of mandate in the Court of Appeal to compel the trial court to dismiss the action. Proceedings in the lower court were stayed and on September 21, 1982, the Court of Appeal issued the requested writ ordering Riccardo's action dismissed for failure to comply with the five-year rule. Her petition for hearing in this court followed.

## II.

 The sole issue presented by this proceeding is whether the trial court properly denied the section 583(b) motion to dismiss Riccardo's malpractice action.[7]

---

[7]Riccardo asserts that the Court of Appeal lacked jurisdiction to order dismissal of her

Section 583(b) provides that a civil case "shall be dismissed" on motion of the defendant or the court if it is not brought to trial within five years after the action is filed.

█ The aim of section 583 is to "promote the trial of cases before evidence is lost, destroyed, or the memory of witnesses becomes dimmed . . . [and] to protect defendants from being subjected to the annoyance of an unmeritorious action remaining undecided for an indefinite period of time." (*General Motors Corp.* v. *Superior Court* (1966) 65 Cal.2d 88, 91 [52 Cal.Rptr. 460, 416 P.2d 492]; *Westinghouse Electric Corp.* v. *Superior Court* (1983) 143 Cal.App.3d 95, 102 [191 Cal.Rptr. 549].)[8]

Despite the mandatory language of the section,[9] this court has made an effort to "set[] reality above artificiality" in applying section 583(b). (*Christin* v. *Superior Court* (1937) 9 Cal.2d 526, 532 [71 P.2d 205, 112 A.L.R. 1153].) █ Implied exceptions to the rule have been recognized

---

action because the trial court had initially erred by ordering her case to arbitration in contravention of the provisions of section 1141.16. This contention was raised for the first time in Riccardo's petition for rehearing in the Court of Appeal. In 1980, this section provided, inter alia, that the conference at which arbitration is ordered "shall be held" no later than 90 days before trial. Riccardo's case was ordered to arbitration 17 days before trial. She asserts that section 1141.16 gives her a "vested right" to trial once the case is within 90 days of the trial date. Therefore, since the lower court's order sending the case to arbitration was in excess of its jurisdiction under section 1141.16, all the proceedings which followed were illegal. This attack amounts to an assertion that section 1141.16 deprives the court of jurisdiction to enter an order for arbitration when the time before trial is less than 90 days. This contention lacks merit for several reasons.

First, the statute explicitly provided that upon motion of a party and for good cause shown the conference at which an arbitration order was entered could be postponed to a time within the 90-day period. Thus, the Legislature itself expressly provided for a situation in which the court had jurisdiction to order a case to arbitration, possibly against the will of a party, within the 90-day period before trial. By its own terms, then, the 90-day rule of section 1141.16 is not absolute.

Second, the unmistakable legislative preference for arbitration, as expressly set forth in section 1141.10, clearly supports the view that the Legislature intended the court to have the broadest possible jurisdiction to enter orders for arbitration. Indeed, "courts should . . . require the use of arbitration . . . whenever possible." (§ 1141.10, subd. (a).)

Finally, because "jurisdiction . . . vested [in a court by the Legislature] may not lightly be deemed to have been destroyed[,] [t]he intent to divest the court of jurisdiction by time requirements is not read into the statute unless that result is expressly provided or otherwise clearly intended." (*Garrison* v. *Rourke* (1948) 32 Cal.2d 430, 435 [196 P.2d 884], disapproved on another point in *Keane* v. *Smith* (1971) 4 Cal.3d 932 [95 Cal.Rptr. 197, 485 P.2d 261].)

Accordingly, this court concludes that the provision of section 1141.16 for referral to arbitration not later than 90 days before the trial date was not jurisdictional in nature and did not confer upon Riccardo a "vested right" to trial.

[8]Although section 583 was not divided into subdivisions until 1969 and has been amended several times since then, the provision now contained in section 583(b), which governs the five-year dismissal rule has remained virtually unchanged since 1933.

[9]The only statutory exception to section 583(b) allows the five-year period to be extended by the parties filing a written stipulation.

"where, for all practical purposes, going to trial would be impossible, whether this was because of total lack of jurisdiction in the strict sense, or because proceeding to trial would be both impracticable and futile." (*Christin, supra,* 9 Cal.2d at p. 533; accord *General Motors, supra,* 65 Cal.2d at p. 94; *City of Pasadena* v. *City of Alhambra* (1949) 33 Cal.2d 908, 916 [207 P.2d 17], cert. den. 339 U.S. 937 [94 L.Ed. 1354, 70 S.Ct. 671]; see also *Bennett* v. *Bennett Cement Contractors, Inc.* (1981) 125 Cal.App.3d 673, 676 [178 Cal.Rptr. 633].) The reasoning underlying these implied exceptions has been repeatedly noted. "The purpose of the statute is . . . to prevent *avoidable* delay for too long a period. It is not designed arbitrarily to close the proceeding at all events in five years. . . ." (*Christin, supra,* 9 Cal.2d at p. 532, italics in original; accord *Woley* v. *Turkus* (1958) 51 Cal.2d 402, 406 [334 P.2d 12]; *Rose* v. *Knapp* (1951) 38 Cal.2d 114, 117 [237 P.2d 981]; *Pacific Greyhound Lines* v. *Superior Court* (1946) 28 Cal.2d 61, 67-68 [168 P.2d 665].)

What is impossible, impracticable or futile must be determined in light of all the circumstances in the individual case, including the acts and conduct of the parties and the nature of the proceedings themselves. (*General Motors, supra,* 65 Cal.2d at p. 96; *Woley* v. *Turkus, supra,* 51 Cal.2d at p. 407, *Rose* v. *Knapp, supra,* 38 Cal.2d at p. 117.) The critical factor in applying these exceptions to a given factual situation is whether the plaintiff exercised reasonable diligence in prosecuting his or her case.

■ The "reasonable diligence" standard is an appropriate guideline for evaluating whether it was impossible, impracticable, or futile for the plaintiff to comply with section 583(b) due to causes beyond his or her control. (See *Westinghouse Electric, supra,* 143 Cal.App.3d at p. 105.) Section 583(b) should not be applied to "penaliz[e] conduct entirely reasonable" nor to impose a "procedure detrimental to the interest of both court and litigants." (*Christin, supra,* 9 Cal.2d at p. 533.) Neither the courts nor litigants have any legitimate interest in preventing a resolution of the lawsuit on the merits if, through plaintiff's exercise of reasonable diligence, the goals of section 583(b) have been met.

This "reasonable diligence" standard has already been adopted in several cases in which the application of section 583(b) has been at issue. (See *Bennett, supra,* 125 Cal.App.3d 673; *Preston* v. *Kaiser Foundation Hospitals* (1981) 126 Cal.App.3d 402 [178 Cal.Rptr. 882].) For example, in *Bennett,* the plaintiff had filed complaints against the defendant in two different counties in October of 1975. One of the cases was subsequently transferred to the county in which the other had been filed, and the cases were consolidated pursuant to the plaintiff's request in April of 1979. The consolidated matters were set for trial to begin in August of 1979, one year

and two months before the five-year statutory period had expired. The defendant's successful motion to have the trial continued until October of 1979 was followed by six additional continuances on the court's own motion on the grounds that no courtroom was available. When the matter was called for trial in February of 1981, the defendant moved to dismiss the case pursuant to section 583(b). The trial court granted the motion.

The Court of Appeal reversed the trial court's judgment. It repeated the rule that "notwithstanding the apparently mandatory language of section 583, subdivision (b), it will not be applied in cases where it is impossible, impracticable or futile due to causes beyond a party's control to bring an action to trial during the five-year period." (*Bennett, supra,* 125 Cal.App.3d at p. 676.) The court found that the plaintiff had taken reasonable steps to secure a trial date, and had brought to the court's attention at that time the fact that the five-year period was approaching. (*Id.,* at pp. 678-679.) Consequently, because the plaintiff had " 'demonstrat[ed] the diligence required of him under the statute,' " the court held that dismissal of plaintiff's case had been an abuse of discretion. (*Id.,* at p. 678, quoting *Goers* v. *Superior Court* (1976) 57 Cal.App.3d 72, 75 [129 Cal.Rptr. 29].)

 Evaluating the facts of this case by the "reasonable diligence" standard delineated above, Riccardo's conduct was sufficiently diligent to warrant application of the impossibility exception to excuse her failure to bring the case to trial within the five-year limit.

Riccardo's action was commenced in March of 1975. Prior to the case being ordered to arbitration on January 25, 1980, she participated actively in an ongoing and thorough discovery process. Riccardo submitted requests for admissions, deposed Moran, and posed interrogatories to him and the other defendants. Riccardo's motions to compel answers to the interrogatories and requests for admissions were argued. In addition, Riccardo offered her own deposition during this period and submitted to a physical examination by the defendants' physicians. The names of Riccardo's expert witnesses were provided to the defendants.

Riccardo participated in the six-day arbitration hearing. When Moran demanded a trial de novo following the arbitrator's $12,000 award in Riccardo's favor, she demonstrated continuing diligence by immediately contacting the master calendar clerk's office and requesting that the matter be promptly reset for trial in order to meet the approaching five-year deadline. Follow-up telephone calls were made during the week of the request to ensure that the resetting process was in motion. The five-year deadline then passed while Riccardo was waiting for the case to be reset for trial.

Furthermore, Riccardo's conduct met, at least in part, one of the goals of section 583(b)—to preserve the evidence necessary for trial before it is "lost, destroyed, or the memory of witnesses becomes dimmed." (*General Motors, supra,* 65 Cal.2d at p. 91.) Riccardo's continuing prosecution of her case by means of interrogatories, depositions and other discovery procedures adequately preserved the relevant evidence and testimony of the witnesses.

It is true that Riccardo took no further action on her request to reset the trial until after the first motion to dismiss was filed in early August of 1981. However, this conduct must be evaluated within the context of Riccardo's previous actions. Riccardo had received assurances—from both the judge when the matter was ordered to arbitration and the court clerk's office when the trial de novo was requested—that the matter would be reset within the five-year period. Further, Riccardo had vigorously prosecuted her case over a number of years before Moran requested the trial de novo. There can be no doubt of the diligence of her attempts to have the matter brought to trial. Consequently, Riccardo's inactivity in the relatively short period following the request for a trial de novo detracts little from her showing of reasonable diligence in prosecuting this case.

Riccardo's overall conduct during the five-year statutory period reflects her reasonable diligence in prosecuting the case. Therefore, the impossibility of Riccardo bringing her case to trial at the very end of this period due to the court's failure to reschedule it warrants invoking the implied exception to mandatory dismissal pursuant to section 583(b).

The trial court properly found that she was entitled to have her case against Moran decided on the merits.

### III.

Riccardo presents a second, independent argument for permitting her action to proceed. She contends that once Moran requested a trial de novo and the superior court was notified that the five-year limit was rapidly approaching, it became the duty of the court to set the case for trial in a timely fashion. She maintains that the five-year period should have been tolled during the time it took the court to fulfill this duty.

The language of the arbitration statute itself confirms that Riccardo's contention has merit. ▮▮▮ Section 1141.20 provides that, after the arbitrator's decision has been filed, a party who is not satisfied with the award must initiate the process which will bring the case to trial by making a timely request for a trial de novo. Once such a request has been made, this

section requires that a case be *calendared* for trial in the order of priority it held before arbitration. ▮ Since the trial court alone has the power to order a matter placed upon its trial calendar, section 1141.20 imposes a duty upon the court *sua sponte* to recalendar the trial in "the same place . . . it had prior to arbitration."[10] ▮ In compliance with this statutory mandate, and in order to ensure that the plaintiff will retain the benefit of the amount of time remaining in the five-year period when the case went into arbitration, that period will remain tolled until the new trial date set by the court.

Such a rule comports with this court's holding in *Hartman* v. *Santamarina* (1982) 30 Cal.3d 762 [180 Cal.Rptr. 337, 639 P.2d 979]. In *Hartman,* the trial judge had been challenged under section 170.6.[11] This motion was followed by an 11-month period of inaction in the case. The lack of action was attributable in part to the court's failure to assign another judge to hear the case. In holding a dismissal under section 583(b) erroneous, this court noted that " 'the period that the trial is held in abeyance pending assignment of another judge *is to be disregarded* in considering a subsequent motion to dismiss.' " (*Hartman, supra,* 30 Cal.3d at pp. 767-768, quoting from *Nail* v. *Osterholm* (1970) 13 Cal.App.3d 682, 686 [91 Cal.Rptr. 908], italics added in *Hartman.*)

The rationale for tolling the five-year period following a section 170.6 motion was set forth by the court in the *Nail* case. After a section 170.6 challenge is allowed "it [is] the duty of a court to assign the case to another judge . . . or if none is available to procure . . . an outside judge through . . . the Judicial Council. . . . [¶] . . . Consequently, plaintiff's counsel was entitled to assume that official duty would be performed . . . ." Thus, *Nail* held that the time it took for the court to perform this duty would be

---

[10]The language of California Rules of Court, rule 1616(b), which implements section 1141.20, does not appear to require all that is mandated by that section. Rule 1616(b) merely provides that, upon a request for a trial de novo, "[t]he case shall be restored to the *civil active list* for prompt disposition, in the same position on the list it would have had if there had been no arbitration in the case . . . ." (Italics added.) Restoration to the "civil active list," however, does not result in a matter being automatically reset for trial. The "civil active list" is merely that list of *cases* which are "at issue but not yet set for trial." (Cal. Rules of Court, rule 207.) However, section 1141.20, while it uses the words "active list," appears to contemplate that the *trial* shall be *calendared* in the same position as before arbitration. Thus, it seems to require more than just the placement of the case in a preferred spot on the civil active list. Hence, compliance by the court with the provisions of rule 1616(b) alone is not sufficient to fulfill the mandate of section 1141.20. The court must actually recalendar the case for trial.

[11]Section 170.6 provides that each party in an action is entitled to what is essentially one peremptory challenge to the judge assigned to hear the action. Upon motion and affidavit by the party, the master calendar judge is required to assign another judge to hear the case. If no other judge is available, the Chairperson of the Judicial Council is required to assign a judge "as promptly as possible."

excluded from the five-year period. (*Nail, supra,* 13 Cal.App.3d at pp. 686-688; accord *Brown* v. *Engstrom* (1979) 89 Cal.App.3d 513, 523-524 [152 Cal.Rptr. 628]; see also *Weeks* v. *Roberts* (1968) 68 Cal.2d 802 [five-year period tolled during period following trial court's erroneous performance of duty].)

The same reasoning applies here. The five-year period elapsed while Riccardo was waiting for the trial court to perform its duty to recalendar the case for trial. Under these circumstances, section 1141.20 requires that the trial court return the action to the calendar in the same position for trial that it held before arbitration. Riccardo had a right to assume that the court would perform its duty so that her new trial date would stand in the same relation to the end of the five-year period as did her original trial date.

Where a defendant seeks a trial de novo after arbitration, the trial court should give the matter priority and assign it the earliest possible trial date. The time between the date the arbitration award is filed with the court and the date set for the new trial is to be excluded from calculation of the five-year period of section 583(b). This rule will ensure that the postarbitration trial date retains the same place in relation to the end of the five-year period as was held by the original trial date.

## IV.

The trial court properly refused to dismiss Riccardo's action under section 583(b) for two independent reasons. First, Riccardo had pursued her action with reasonable diligence so the court correctly found that the impossibility of Riccardo's bringing her action to trial without a trial date invoked an implied exception to section 583(b). Second, dismissal of Riccardo's action was premature because the time from the filing of the arbitration award until the new trial date of October 14, 1983, should have been excluded in calculating the five-year limit.[12]

Accordingly, the alternative writ of mandamus is discharged and the petitions for writ of mandamus are denied.

Mosk, J., Kaus, J., Broussard, J., Reynoso, J., and Grodin, J., concurred.

---

[12]Riccardo also contends that Moran should be estopped from asserting the running of the five-year period. This contention is based upon the fact that Moran himself requested the trial—a trial which Riccardo, satisfied with the arbitration award, did not seek or want.

The doctrine of estoppel has been held to bar a defendant from seeking to invoke dismissal under section 583(b). (*Woley* v. *Turkus, supra,* 51 Cal.2d at p. 409; *Borglund* v. *Bombardier, Ltd.* (1981) 121 Cal.App.3d 276, 281 [175 Cal.Rptr. 150].) However, since this case is resolved on other grounds, the question as to whether Moran's request for a trial de novo after arbitration would estop him from asserting the five-year limit need not be decided.

**KAUS, J.**—I concur on my understanding that part II of the court's opinion does not intend to transplant the philosophy of *Hocharian* v. *Superior Court* (1981) 28 Cal.3d 714 [170 Cal.Rptr. 790, 621 P.2d 829] from section 581a of the Code of Civil Procedure—its former habitat—to subdivision (b) of section 583. *Hocharian,* of course, is generally understood to mean that in cases involving mandatory dismissals for failure to prosecute, the key issue is the plaintiff's diligence, rather than the existence of a specific judicially developed exception or exceptions. As far as section 581a is concerned, the Legislature quickly amended that statute by adding subdivision (f) to nullify *Hocharian* (Stats. 1982, ch. 600, § 1, p. 2575).[1] The exceptions allowed by that amendment are, of course, those which have long been judicially recognized as qualifying section 583, subdivision (b). The 1982 legislation is therefore not merely a repudiation of *Hocharian,* but an affirmation of pre-*Hocharian* law with respect to section 583, subdivision (b).

While certain passages of part II of the court's opinion are reminiscent of *Hocharian,* they are not necessarily at odds with the 1982 legislation. The opinion does rely on *Westinghouse Electric Corp.* v. *Superior Court* (1983) 143 Cal.App.3d 95, 105 [191 Cal.Rptr. 549], where there the Court of Appeal held: "[W]e believe reasonable diligence constitutes a guideline by which to assess *the existing exceptions of impossibility, impracticability or futility.*" (My italics.) No one can quarrel with that formulation.

The facts depicted in the court's opinion persuade me that under all the circumstances it was impracticable for plaintiff to bring the case to trial within the statutory period and that she was not guilty of such a lack of diligence as would estop her from claiming that the impracticability exception applies to her.

Grodin, J., concurred.

---

[1] "(f) Except as provided in this section, the provisions of this section are mandatory and are not excusable, and the times within which acts are to be done are jurisdictional. Compliance may be excused only for either of the following reasons: [¶] (1) Where the defendant or cross-defendant is estopped to complain. [¶] (2) Where it would be impossible, impracticable, or futile to comply due to causes beyond a party's control. However, failure to discover relevant facts or evidence shall not excuse compliance."