[No. B049568. Second Dist., Div. Three. Feb. 3, 1992.]

SCOTT T. WINSTON, Plaintiff and Appellant, v.
LORENE WOODWARD, Defendant and Respondent.

COUNSEL

Frank J. Dillon for Plaintiff and Appellant.

Gary R. Carlin for Defendant and Respondent.

OPINION

**KLEIN, P. J.**—Plaintiff and appellant Scott T. Winston (Winston) appeals an order dismissing his action against defendant and respondent Lorene

Woodward (Woodward) pursuant to Code of Civil Procedure sections 583.420, subd. (a)(2)(B) and 583.310.[1]

The issue presented is whether the tolling period for judicial arbitration ended with the arbitrator's order that the matter was not amenable to arbitration and would be restored to the civil active list, or whether the tolling period ended some seven months later, when the matter actually was restored to the civil active list.

Because Winston did not follow up to ensure a prompt restoration of the matter to the civil active list and the setting of a trial date within the five-year period, the failure to bring the matter to trial within five years was the result of Winston's lack of diligence, rather than impossibility due to nonperformance of official duty. The order therefore is affirmed.

### FACTUAL AND PROCEDURAL BACKGROUND

On January 9, 1984, Winston filed suit against Woodward for breach of contract, misrepresentation and breach of quiet enjoyment. Winston pled, inter alia, that Woodward breached their contract by cancelling her listing agreement with Winston and Seaside Land Company, and by filing an unlawful detainer action against Winston and his two house guests, in violation of the terms of the contract which gave Winston the unconditional use of the property for purposes of marketing the property.

On January 9, 1984, Winston also filed a lis pendens, which he withdrew two weeks later.

On April 25, 1984, Winston filed a request to enter Woodward's default, and sought entry of judgment in the amount of $68,433.

The matter was heard on June 11, 1984. The trial court found for Winston in the amount of $1,000 as to the first cause of action, $39,341 as to the second cause of action, and $1,500 as to the third cause of action. On June 18, 1984, judgment by court after default was entered in the amount of $41,841.16, plus $93 in costs.

On July 17, 1984, Woodward filed a motion to vacate the default and to obtain permission to answer. Woodward argued inadvertence, surprise and excusable neglect in that Winston's attorney orally had agreed to an extension of time and had promised not to take a default until the end of that time.

---

[1]All statutory references are to the Code of Civil Procedure unless otherwise specified. Also, all rule references are to the California Rules of Court.

A supporting declaration by Woodward's counsel stated Winston's attorney had agreed to an extension of time to answer to April 23, 1984, and Winston sought a default the very next day. Further, during the period in question, Woodward's counsel was in the process of establishing a law office, lacked adequate secretarial support, and had a heavy caseload, including many court appearances.

On August 28, 1984, the trial court granted Woodward's motion to vacate the default and deemed Woodward's cross-complaint against Winston filed and served. The trial court also ordered Woodward to pay sanctions in the amount of $1,500 in attorney's fees, said sanctions to be stayed for 60 days.

Winston answered the cross-complaint on September 6, 1984.

On January 3, 1985, Winston moved for an order reinstating the default and striking Woodward's answer and cross-complaint. The ground of the motion was that Woodward's counsel had failed to pay the $1,500 sanction to Winston's counsel and had no intention of complying with the trial court's order.

On March 5, 1985, the trial court denied Winston's motion to reinstate the default.

On August 6, 1985, Woodward noticed Winston's deposition for September 3, 1985.

On March 10, 1988, 10 months before the 5-year mark, Winston filed an at-issue memorandum.

On April 4, 1988, the superior court clerk gave Winston notice of an arbitration status conference set for April 28, 1988. At the conference, the trial court found the amount in controversy did not exceed $50,000 and ordered the case into judicial arbitration.

Nearly a year later at the hearing on April 11, 1989, the arbitrator ruled the matter was too complex and too lengthy to be amenable to arbitration and directed the matter restored to the civil active list.[2]

On April 17, 1989, Winston filed a motion for leave to file a first amended complaint. Woodward opposed the motion, arguing inexcusable delay by

[2]Rule 1600.5 states: "The following actions are exempt from arbitration: [¶] . . . [¶] (f) Any action otherwise subject to arbitration that is found by the court to be not amenable to arbitration on the ground that arbitration would not reduce the probable time and expense necessary to resolve the litigation[.]"

Winston in presenting the proposed amendment. On June 7, 1989, the trial court granted the motion, and Woodward filed an answer to the amended pleading.

On November 27, 1989, the trial court sent Winston a notice of trial setting conference on January 9, 1990, and notice of intention to dismiss on the court's own motion for lack of prosecution. The conference proceeded on the set date, at which time the trial court set a mandatory settlement conference for March 23, 1990.

On January 12, 1990, Woodward filed a motion to dismiss under the five-year statute, or in the alternative, for delay in prosecution. Woodward argued the action, which was commenced on January 9, 1984, had not been brought to trial within five years, including any periods in which the statute had been tolled, suspended or extended while the matter had been submitted to arbitration. Woodward also urged undue delay by Winston in the prosecution of the action.

In opposition, Winston asserted the action was not time-barred because the arbitrator did not file an award with the court, as there was no award to be filed. Thus, there was no request for trial de novo to recommence the running of the statute. The arbitrator merely indicated he would order the case restored to the civil active list. However, there was no such order in the court's file and the case remained in arbitration until it was moved to the civil active list on November 16, 1989. Thus, the final six-month period began on that date and would not expire until May 16, 1990.

The matter was heard and the trial court granted dismissal on March 12, 1990. It stated: "Taking the total picture into account, the Court notes the case was ordered to arbitration on 04-28-88, but no arbitration took place. The plaintiff has the duty of reasonable diligence to draw the matter to the calendaring Court's attention [and the imminent approach] of the five year statute. The motion to dismiss is granted pursuant to . . . 583.420(a)(2)(B) and 583.310."

Winston appealed.

CONTENTIONS

Winston contends dismissal was error because the time during which the action remained in arbitration is excluded from the computation of the five-year period. Pursuant to his theory he had until May 16, 1990, six months after the case was restored to the civil active list, to bring the action to trial.

DISCUSSION

1.  *Dismissal was proper because Winston failed to exercise diligence to bring action to trial within six months after case was ordered removed from arbitration.*

a.  *General principles.*

Section 583.310 provides: "An action shall be brought to trial within five years after the action is commenced against the defendant."

Section 583.360 states: "(a) An action shall be dismissed . . . if the action is not brought to trial within the time prescribed in this article. [¶] (b) The requirements of this article are mandatory and are not subject to extension, excuse, or exception except as expressly provided by statute."

Section 1141.17 addresses the impact of arbitration on the running of the five-year statute. It provides: "(a) Submission of an action to arbitration pursuant to this chapter shall not suspend the running of the time periods specified in Chapter 1.5 (commencing with Section 583.110) . . . , except as provided in this section. [¶] (b) If an action is or remains submitted to arbitration pursuant to this chapter more than four years and six months after the plaintiff has filed the action, then the time beginning on the date four years and six months after the plaintiff has filed the action and ending on the date on which a request for a de novo trial is filed under Section 1141.20 shall not be included in computing the five-year period specified in Section 583.310."

b.  *Application here.*

The action, which was commenced on January 9, 1984, was in arbitration at the four- and one-half-year mark, and arguably, it remained in arbitration until April 11, 1989. Under section 1141.17, it would appear Winston then had six months to bring the action to trial. He failed to do so.

■ The essential issue is whether the April 11, 1989, date recommenced the running of the five-year period, despite the fact there was no request for trial de novo, as contemplated by section 1141.17. We conclude that it did.

For purposes of the statutory scheme requiring cases to be brought to trial timely, the removal of a case from arbitration by the arbitrator is the functional equivalent of the filing of a request for trial de novo. In either case, it is apparent the arbitration did not dispose of the matter and the case is headed for trial.

While tolling continues until a request for trial de novo is filed under section 1141.20, it has been held that tolling can end in other ways. *Niesner* v. *Kusch* (1986) 186 Cal.App.3d 291, 297 [230 Cal.Rptr. 613], involved a scheduled arbitration hearing that never occurred, as contrasted with one that started and did not go forward, as here. *Niesner* stated: ". . . [U]nder [section 1141.17], the tolling continues until a request for trial de novo is filed under section 1141.20. This is not to suggest, however, that tolling cannot end sooner. For example, the arbitration process may be ended on motion of one of the parties. (See, e.g., *Invicta Plastics, U.S.A., Ltd.* v. *Superior Court* (1981) 120 Cal.App.3d 190 [174 Cal.Rptr. 476]; accord, *Carpenters So. Cal. Administrative Corp.* v. *Surety Co.* [1983] 145 Cal.App.3d [245,] 250 [193 Cal.Rptr. 308].) [Fn. omitted.]" (*Niesner, supra,* 186 Cal.App.3d at p. 297.)

Also, if no arbitration hearing is held due to the neglect or noncooperation of a party who elected to arbitrate, the case is subject to removal from the arbitration hearing list and restoration to the civil active list. (Rule 1605(c).)

The tolling ended in this case with the arbitrator's April 11, 1989, ruling that the case was not amenable to arbitration and the direction that the matter be restored to the civil active list.

■ Winston argues the time did not begin to run on April 11, 1989, because it is the duty of the trial court to set the case for trial and he should not be deprived of his day in court due to the nonperformance of official duty. (*Moran* v. *Superior Court* (1983) 35 Cal.3d 229 [197 Cal.Rptr. 546, 673 P.2d 216].) The contention is unavailing. Merely because the trial court alone has the power to order a matter placed upon its trial calendar does not relieve a plaintiff of the requirement of continuing diligence at every stage of the proceedings, including judicial arbitration. (*Hill* v. *Bingham* (1986) 181 Cal.App.3d 1, 10-12 [225 Cal.Rptr. 905]; rule 1600 et seq.)

Here, when the arbitrator determined the matter was not amenable to arbitration, it was Winston's duty to follow up and see that the matter was restored to the civil active list promptly. Winston failed to do so.[3]

Further, once the matter came out of arbitration, Winston was required to " ' "call to the attention of the court the necessity for setting the trial for a time within the period fixed by [the statute]." ' " (*Hill, supra,* 181 Cal.App.3d at p. 10.) However, Winston did nothing at that juncture to alert the trial court of the posture of the case.

Counsel's declaration, filed in opposition to the motion to dismiss, merely indicates counsel contacted the court clerk twice to inquire when a trial date

---

[3]Winston's filing on April 17, 1989, of a motion to amend the complaint reflects he was aware the matter had come out of arbitration on April 11, 1989.

would be set, and that he mentioned to the arbitration administrator his inability to obtain a trial date. Counsel therefore did not alert the trial court with any degree of specificity as to the recent procedural background of the matter. No mention was made of the attempted judicial arbitration, nor the arbitrator's April 11, 1989, order that the case be restored to the civil active list. Importantly, he did not remind the clerk the five-year deadline was fast approaching. (*Hill, supra,* 181 Cal.App.3d at p. 10.) Winston's action fell far short of a plaintiff's obligation to advise the clerk of the case's proximity to the five-year mark.

It was Winston's lack of diligence following the failure of the arbitration and the order directing restoration of the matter to the civil active list which prevented the case from being tried within five years, not impossibility due to nonperformance of official duty by the arbitrator or by the court clerk. "A contrary conclusion would completely shift responsibility for keeping track of all applicable dates and for moving cases forward from plaintiffs to an already overburdened court system." (*Hill, supra,* 181 Cal.App.3d at p. 12.) If this statement were true in 1986 when *Hill* v. *Bingham* was decided, the premise enunciated is even more timely today.

Accordingly, the trial court properly dismissed the action under the five-year statute.[4]

DISPOSITION

The order is affirmed.

Woodward to recover costs on appeal.

Danielson, J., and Croskey, J., concurred.

A petition for a rehearing was denied February 19, 1992.

---

[4]The Legislature has not addressed what event halts the tolling period for judicial arbitration in situations such as here, where the submission of the action to arbitration did not conclude in the filing of an award, followed by a request for trial de novo. (§§ 1141.17, 1141.20.) While we came to what we determine to be a sound conclusion herein, we invite the Legislature to revisit this area.