[No. B012043. Second Dist., Div. Two. Sept. 30, 1986.]

RON MINKIN, Plaintiff and Appellant, v.
CHARLES LEVANDER et al., Defendants and Respondents.

**COUNSEL**

Vincent J. Oliver for Plaintiff and Appellant.

Jeff A. Lesser, Roger J. Nichols and Arthur I. Weiss for Defendants and Respondents.

**OPINION**

**COMPTON, J.**—Plaintiff Ron Minkin appeals from a judgment (order) of dismissal entered pursuant to Code of Civil Procedure section 583, subdivision (b)[1] for failure to bring the matter to trial within five years after the filing of the complaint. We affirm.

---

[1] Hereinafter, unless otherwise indicated, all section references are to the Code of Civil Procedure.

Former section 583, subdivision (b) provided as follows: "Any action heretofore or hereafter commenced shall be dismissed by the court in which the same shall have been commenced or to which it may be transferred on motion of the defendant, after due notice to plaintiff or by the court upon its own motion, unless such action is brought to trial within five years after the plaintiff has filed his action, except where the parties have filed a stipulation in writing that the time may be extended." Although the foregoing section was repealed in 1984, its substance was reenacted in sections 583.310-583.360. For convenience of reference we will refer to section 583, subdivision (b) in the present tense throughout this opinion, and our analysis will apply to the current statutory scheme as well.

The facts leading to the dismissal are not in dispute and may be briefly summarized as follows. On April 13, 1979, plaintiff filed his initial complaint seeking damages against defendants Charles Levander, Bill Garland, Bateman Eichler, Hill Richards, Inc. (Bateman), and Investors Financial Services, Inc.[2] for securities fraud. Between the time the action was commenced and April 1982, plaintiff, a practicing attorney, was represented by various members of his own firm, including his partner, Leonard C. Cohn. Following discovery, the complaint was nominally amended in September 1981 to include an additional defendant.[3]

Some months after the filing of an at-issue memorandum in February 1982, plaintiff substituted himself as attorney of record. Following his failure to appear at a court ordered arbitration conference in May 1982, the at-issue memorandum was stricken and the case was removed from the civil active list.

In June 1983, plaintiff abandoned his pro. per. status and substituted Kenneth A. Costanzo as trial counsel. After this substitution, the action apparently slumbered until March 28, 1984, when, with the five-year statute set to expire on April 13, 1984, plaintiff sought and obtained an ex parte order shortening time for a motion to advance the case and specially set it for trial. The application and motion, both prepared by an associate in Minkin's firm, were based upon the alleged incompetence of Costanzo in failing to move the matter forward in a timely manner. The application was granted and a hearing on the motion was set for April 3, 1984.

Despite plaintiff's contention of incompetence on the part of trial counsel, Costanzo appeared at the hearing and argued the merits of the motion. Although the court declined to set the case for trial before April 13, 1984, or dismiss the suit on its own motion (see former § 583, subd. (a)),[4] it acceded to plaintiff's request and scheduled trial to commence June 5, 1984. Defendants subsequently moved to dismiss the action pursuant to section 583, subdivision (b), and a hearing thereon was held June 1, 1984. Costanzo

---

[2]At some undetermined time, Investors Financial Services, Inc. changed its corporate name to I.F.S., Inc.

[3]In his motion to amend, plaintiff alleged that in June 1978, Investors Financial Services, Inc., then known as California Securities Settlement, Inc., sold certain assets to Joseph Sebags Company, which created a new corporation but retained the old name of Investors Financial Services, Inc. Although the allegations are somewhat unclear, Investors Financial Services, Inc. and I.F.S., Inc. are separate corporate entities.

[4]Former section 583, subdivision (a) provided: "The court, in its discretion, may dismiss an action for want of prosecution pursuant to this subdivision if it is not brought to trial within two years after it was filed. The procedure for obtaining such dismissal shall be in accordance with rules adopted by the Judicial Council."

The substance of this section was reenacted in section 583.410 (see fn. 1, *ante.*)

again appeared for plaintiff and, for the first time, argued that his efforts to bring the matter to trial within the five-year period were made impossible and futile because of the bankruptcy of Investors Financial Services, Inc. (Investors hereafter)—the corporation owned by Joseph Sebags Company—and that any litigation relating to this particular defendant had been stayed by order of the federal bankruptcy court. Based upon these representations, the trial court ruled that the effect of the bankruptcy and the issue of Investors' status as an indispensable party were factual questions that required resolution before the motion to dismiss could be properly and fully considered.[5]

At plaintiff's behest, and over defendants' objections, trial was continued to October 19, 1984. On that date, with defendants announcing they were ready to proceed, trial again was postponed on plaintiff's motion to February 27, 1985. In the interim, defendant Levander propounded a set of interrogatories to Minkin on the issue of Investors' status as an indispensable party to the action, the answers to which failed to substantiate any factual basis for plaintiff's claim.

In response to defendants' renewed motion to dismiss for lack of prosecution, filed in February 1985, plaintiff abandoned his contention that Investors was an indispensable party, and once again argued that the case had been delayed because of Costanzo's incompetence and refusal to communicate with Minkin.[6] Plaintiff further maintained that the trial court had abused its discretion when it denied the motion to specially set in April 1984. In his opposition papers, Minkin himself declared that since April 3, 1984, he had been "ready, willing and able to proceed to trial, and remains so to this day." Following a hearing on the motion, the case was dismissed and this appeal follows.

In urging us to reverse, plaintiff essentially argues that he demonstrated due diligence in attempting to bring the case to trial, but was prevented from doing so because of his attorney's incompetence and the trial court's refusal to specially set the matter before the end of the statutory period.

---

[5]The court's minute order states in pertinent part: ". . . The complaint alleges joint misconduct. One of the defendants appears to be in bankruptcy. There is a confusion as to I.F.S. versus Investors Financial Services which is impossible to resolve within the framework of a law department hearing. The confusion will determine whether the case should be dismissed under CCP 583 (b). The facts must be determined in a trial department *before* the trial goes forward. It is possible, although highly unlikely, that the action was stayed as to an indispensable party (see *Barttle* v. *Los Angeles* (1984) 153 CA3 520; *Hughes* v. *Robo* (1982) 135 CA3 170.) If the bankrupt entity is not factually involved in the case, there does not appear to be *any* reason why the motion under CCP 583 (b) should not be granted." (Italics in original.)

[6]As before, the response to defendants' motion to dismiss was prepared and filed by an associate in plaintiff's firm.

Although the language of section 583, subdivision (b) is seemingly clear, unambiguous, and mandatory, it has been judicially interpreted to provide certain exceptions thereto.

■ The five-year mandatory dismissal requirement has been held not to apply where it was impossible, impracticable or futile for a plaintiff to bring the matter to trial within the statutory period. (*Hocharian* v. *Superior Court* (1981) 28 Cal.3d 714 [170 Cal.Rptr. 790, 621 P.2d 829]; *Wyoming Pacific Oil Co.* v. *Preston* (1958) 50 Cal.2d 736 [329 P.2d 489]; see also § 583.340, subd. (c).)

"What is impossible, impracticable or futile must be determined in light of all the circumstances in the individual case, including the acts and conduct of the parties and the nature of the proceedings themselves. [Citations.] The critical factor in applying these exceptions to a given factual situation is whether the plaintiff exercised reasonable diligence in prosecuting his or her case." (*Moran* v. *Superior Court* (1983) 35 Cal.3d 229, 238 [197 Cal.Rptr. 546, 673 P.2d 216]; see also *Westinghouse Electric Corp.* v. *Superior Court* (1983) 143 Cal.App.3d 95, 105-107 [191 Cal.Rptr. 549].)

The courts of this state have long reiterated that a plaintiff must be able to demonstrate diligence in pursuit of his duty to expedite the resolution of his case at *all* stages of the proceedings, to invoke the implied exceptions. (*Griffis* v. *S. S. Kresge Co.* (1984) 150 Cal.App.3d 491, 496 [197 Cal.Rptr. 771].) At the same time, a "defendant need make no move until the law requires him to do so 'in response to the movements of plaintiff at the various stages of the litigation.'" (*Bonelli* v. *Chandler* (1958) 165 Cal.App.2d 267, 275 [331 P.2d 705]; *Black Bros. Co.* v. *Superior Court* (1968) 265 Cal.App.2d 501 [71 Cal.Rptr. 344].)

Central to a plaintiff's general duty is the specific duty to keep track of the calendar and the pertinent dates which are crucial to maintenance of his lawsuit, and to see that the action is brought to trial within the five-year period. (*Singelyn* v. *Superior Court* (1976) 62 Cal.App.3d 972, 975 [133 Cal.Rptr. 486]; *Griffis* v. *S. S. Kresge Co., supra,* at p. 496.)

■ Applying these principles to the case at bench, we think it clear that plaintiff did not act with all reasonable diligence in moving this matter to trial. As previously noted, between the time the suit was commenced in April 1979 and April 1982, plaintiff, himself a practicing attorney, was represented by members of his own law firm. During this period, the initial complaint was nominally amended and an at-issue memorandum was lodged

with the court. For reasons unapparent from the record, plaintiff then elected to proceed in pro. per. and one month later, when he failed to appear at a mandatory arbitration conference, the case was removed from the civil active list. At no time prior to April 1984 did plaintiff take any action to file and serve a new at-issue memorandum and have the suit restored to the superior court's list of pending cases. Neither at the trial level nor on appeal has plaintiff attempted to explain this omission.

With a mere 16 days remaining before the expiration of the 5-year period, plaintiff made his ex parte application for an order shortening time for service and hearing of a motion to specially set the case for trial. Despite the fact that the application failed to cite either the date of the filing of the lawsuit or the end of the statutory period, among other deficiencies, the order was granted. Although plaintiff attributed the delay in prosecution of the case to his attorney's incompetence, that same attorney was inexplicably permitted to argue the merits of the motion. The court, noting that some discovery had occurred during the preceding six months, declined to dismiss the suit on its own motion. Emphasizing, however that "hundreds and thousands" of properly prepared cases were awaiting trial, the court concluded that it would be "unfair" to give the matter preference and set a trial date before April 13, 1984.

Under the circumstances, we cannot hold that the court's ruling constituted an abuse of discretion. Although a plaintiff may reasonably expect to receive an ex parte order shortening time in which to bring a motion to specially set a case for trial (see *Griffis* v. *S. S. Kresge Co., supra,* 150 Cal.App.3d 491, 498), a trial court must nonetheless comply with the dictates of section 594, subdivision (a). That statute provides that an issue of fact may not be tried in the absence of an adverse party, unless it is shown to the satisfaction of the court that the adverse party had 15 days' notice of the date set for trial. ■ Compliance with section 594, subdivision (a) is mandatory and jurisdictional, and the time limits prescribed therein may not be shortened except by waiver or the consent of the parties. (*Irvine National Bank* v. *Han* (1982) 130 Cal.App.3d 693, 697 [181 Cal.Rptr. 864]; *Bird* v. *McGuire* (1963) 216 Cal.App.2d 702, 713 [31 Cal.Rptr. 386]; see also 59 Cal.Jur.3d, Trial, § 12, p. 468.)

■ Here, of course, plaintiff *was* granted an order shortening time despite the requirements of section 1005,[7] and the motion to specially set was heard on April 3, 1984, 10 days before the expiration of the 5-year

---

[7]Section 1005 reads in pertinent part: "When a written notice of a motion is necessary, it shall be given at least 15 days before the time appointed for the hearing and shall be accompanied by all supporting points and authorities, declarations, and other supporting materials; . . ."

statute. Pursuant to section 594, subdivision (a), the trial court did not have jurisdiction to set a trial date any earlier than April 18, 1984, some five days after the statutory period had expired. Given plaintiff's neglect in moving the case forward and the lateness of his motion to specially set, the court was acting well within its discretion when it scheduled trial to commence on June 5, 1984.

Citing *Campanella* v. *Takaoka* (1984) 160 Cal.App.3d 504 [206 Cal.Rptr. 745], plaintiff nonetheless argues that the trial court was under a mandatory duty to set a preferential trial date in light of the approaching five-year deadline. This contention was specifically rejected by our Supreme Court in the recent case of *Salas* v. *Sears, Roebuck & Co.* (1986) 42 Cal.3d 342 [228 Cal.Rptr. 504, 721 P.2d 590]. In disapproving *Campanella*, and adopting the approach we advanced in *Karubian* v. *Security Pacific Nat. Bank* (1984) 152 Cal.App.3d 134, 140 [199 Cal.Rptr. 295], the court observed: "Although the approach of the five-year limit is a critical consideration in ruling on motions pursuant to section 36(d),[8] . . . we disapprove *Campanella* and *Kotoff* [*Kotoff* v. *Elseoff* (1985) 172 Cal.App.3d 991 (218 Cal.Rptr. 499)] to the extent they conclude that a court exercising its discretion on a motion for special trial preference may not consider the plaintiff's lack of diligence or prejudice to the defendant once the five-year bar is imminent. [¶] In *Wilson* v. *Sunshine Meat & Liquor Co.* (1983) 34 Cal.3d 554 [194 Cal.Rptr. 773, 669 P.2d 9] (hereinafter *Wilson*), we emphasized that a motion for a preferential setting raises the same issues for the trial court as a motion to dismiss for failure to prosecute pursuant to section 583(a): "'In passing upon the motion for an early and preferential setting, the court was not limited to a consideration of the single fact that the five-year period was about to expire but was required to view the total picture, including the dilatory action of the plaintiff, the condition of the court's calendar, the rights of other litigants, and the prejudice to the defendant resulting from the delay. [Citations.] The action of the court on such a motion is tantamount to action upon a motion to dismiss for failure to prosecute within the two-year period prescribed by section 583 of the Code of Civil Procedure; in each instance the motion is addressed to its sound legal discretion; the motivating factors in the exercise of that discretion would be pertinent to both motions; and its decision 'will be disturbed only in cases of manifest abuse.'"'" (*Salas, supra,* at p. 346.)

---

[8]As the court noted: "On its face section 36(d) commits motions for preference to the trial court's discretion. It provides, 'Notwithstanding any other provision of law, the court may in its discretion grant a motion for preference served with the memorandum to set or the at-issue memorandum and accompanied by a showing of cause which satisfies the court that the interests of justice will be served by granting such preference.'" (*Salas, supra,* at pp. 345-346.)

The court went on to conclude as follows: "A discretionary standard for determining motions under section 36(d), even on the eve of the five-year deadline, is consistent with the legislative intent to promote diligent and orderly prosecution by requiring plaintiffs to make some showing of excusable delay. We are concerned that court congestion remains an unfortunate reality, causing inevitable delay, often of several years, regardless of a party's diligence. As we emphasized in *Weeks* [*Weeks* v. *Roberts* (1968) 68 Cal.2d 802 (69 Cal.Rptr. 305, 442 P.2d 361)], it is monstrous to deny a forum to a plaintiff simply because the procedure of the courts has been too slow. (68 Cal.2d at p. 807.) On the other hand, if we were to require mandatory early trial setting without regard to a plaintiff's diligence we would in effect reward unreasonable procrastination to the prejudice of defendants, to diligent litigants who have had trials set and as a result will lose their priority, and to our already overburdened court calendars." (*Id.*, at p. 349.)

In our case, as in *Salas* v. *Sears, Roebuck & Co., supra,* 42 Cal.3d 342, the trial court's denial of a preferential setting and its refusal to dismiss on its own motion provided plaintiff with numerous advantages of which he failed to avail himself. Instead of readying the case for trial, plaintiff elected, at the last possible moment, to raise the issue of Investors' bankruptcy and the status of that defendant as an indispensable party to the action. As later established, this issue was totally without merit and was subsequently abandoned once the claim could not be substantiated. It seems clear plaintiff's tactics were solely calculated to bring about further delay and cause defendant to needlessly expend additional resources in opposing a fanciful contention.

Minkin's failure to initiate meaningful discovery at the earliest possible date, his nonappearance at a mandatory arbitration conference, and his lack of diligence in restoring the case to the civil active list after the at-issue memorandum was stricken, persuades us that there was no basis for relieving plaintiff of the fatal consequences of his own procrastination. (Cf. *Salas* v. *Sears, Roebuck & Co., supra,* 42 Cal.3d 342, 349-350.)

We turn next to plaintiff's contention that any delays in the prosecution of this lawsuit resulted from the incompetence of his trial counsel, Mr. Costanzo. We begin our discussion by noting that the cases are all too frequent where laymen are foreclosed from their day in court by the actions of their counsel in whom they have placed their trust. ■ The law, however, must impute the actions of the attorney to the client who retained him unless his neglect was so inexcusable and extreme as to constitute positive misconduct. (See *Daley* v. *County of Butte* (1964) 227 Cal.App.2d 380 [38

Cal.Rptr. 693].) This is especially true where the client is himself an experienced attorney licensed to practice law in this state.

Although plaintiff first argued that counsel had failed to adequately represent his interests when he moved to have the case specially set for trial in March 1984, Costanzo was allowed to continue as attorney of record for the next 10 months. The issue of incompetence was abandoned, of course, when plaintiff elected to pursue the effect of Investors' bankruptcy on its status as an indispensable party to the action. Moreover, the case was delayed at Minkin's request when he sought to continue the matter on two separate occasions. Only after he failed to substantiate the claim that Investors was an indispensable party did plaintiff renew the argument that Costanzo was at fault for failing to move the lawsuit forward in a timely manner. In so arguing, Minkin conveniently ignores the fact that Costanzo did not become attorney of record until six months before the five-year period was set to expire and that the at-issue memorandum was stricken and the case removed from the civil active list because of his own failure, while representing himself, to appear at a court ordered arbitration conference. While the record is replete with declarations attempting to support the claim of Costanzo's incompetence, it seems obvious to us that plaintiff, for whatever reasons, purposefully ignored his attorney's lapses and was personally neglectful in pursuing his own lawsuit. Costanzo's actions and/or omissions did not constitute positive misconduct entitling plaintiff to any relief. (Cf. *Carroll v. Abbott Laboratories, Inc.* (1982) 32 Cal.3d 892, 898-901 [187 Cal.Rptr. 592, 654 P.2d 775].)

It has been aptly remarked that "[t]he purpose of Code of Civil Procedure section 583 is dual: one is effectually the same as that of statute of limitations—they are both statutes of repose, seeking to discourage stale claims 'to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared.' [Citations.] Secondly, the dismissal section is designed to compel reasonable diligence in the prosecution of actions, thereby expediting the administration of justice." (*Dunsmuir Masonic Temple* v. *Superior Court* (1970) 12 Cal.App.3d 17, 22-23 [90 Cal.Rptr. 405].) We further note that the statutory purpose relating to the administration of justice has taken on added significance in the wake of the law explosion and the resulting backlog of cases in the courts. (*Lopez* v. *Larson* (1979) 91 Cal.App.3d 383, 400 [153 Cal.Rptr. 912].)

Although we recognize that justice generally is better served when cases are heard on the merits, we also recognize that, in some instances, justice will be better served by the dismissal of an action. Under the circumstances presented in the case at bench, we must conclude that the trial court did not abuse its discretion in granting the motion to dismiss.

The judgment (order of dismissal) is affirmed.

Roth, P. J., and Gates, J., concurred.