[No. A039932. First Dist., Div. Two. Oct. 20, 1988.]

POLLY S. FERK et al., Plaintiffs and Appellants, v.
COUNTY OF LAKE et al., Defendants and Respondents.

**COUNSEL**

Marc D. Mezzetta for Plaintiffs and Appellants.

Cameron L. Reeves, County Counsel David B. Walker, Deputy County Counsel, Frederic S. Crump, Crump, Buchler & Crump, William S. Loughman and Gilden, Belkin, Foster & Doyle for Defendants and Respondents.

**OPINION**

**KLINE, P. J.—**

### INTRODUCTION

Polly Ferk appeals a judgment of the Lake County Superior Court dismissing her action for injunctive relief and damages to real property. She contends the court abused its discretion in granting the dismissal for failure to prosecute within five years. (Code Civ. Proc., §§ 583.310-583.360.)

## STATEMENT OF THE CASE/FACTS

On June 3, 1982, LeRoy and Polly Ferk (husband and wife) filed a complaint for injunctive relief and for damages to real property owned by the Ferks in joint tenancy.[1] The complaint alleged defendants interfered with the natural drainage thereby causing erosion to Ferks' real property. On April 13, 1983, a first amended complaint was filed and was served on defendant Lake County (the County). The County answered on May 13, 1983; all other defendants answered by June 21, 1983. A cross-complaint was filed by defendants Harlan O. Bowen and Eunice Bowen on June 21, 1983. Individual defendants answered the cross-complaint in July 1983. A separate cross-complaint was filed against the County alone in January 1984. No answer was filed by the County. During the five years after June 3, 1982, no Memorandum That Civil Case Is At-Issue was filed by plaintiffs. (Cal. Rules of Court, rule 209(a).) On October 12, 1983, the Ferks filed a substitution of attorney, substituting themselves in pro. per. for their former attorney, Phil N. Crawford.

There was no further activity in the action until June 4, 1987, after expiration of the five-year period, when Polly Ferk substituted Mark D. Mezzetta as her attorney. Thereafter, Polly Ferk moved for an Order Granting Preference and filed an at-issue memorandum. The trial court refused to transfer the case to the civil active list, on the basis that cross-defendants had not answered the Bowen cross-complaint.

The County moved to dismiss the action under Code of Civil Procedure, sections 583.310 through 583.360 as the action had not been brought to trial

---

[1] In her reply brief appellant for the first time raises a question as to the joint tenancy character of the property, asserting that "at no time during the hearing on the motion to dismiss, nor at any other time, has any evidence been presented that the property was, in fact, held in joint tenancy." The joint tenancy character of the property has never been challenged before.

Counsel for appellant effectively *conceded* in his argument to the court below that the property was held in joint tenancy by the Ferks: "Mr. Mezzetta: Your Honor, . . . the major issue in the case seems to be . . . does Mr. Ferk's claim for damages survive his death, notwithstanding the *joint-tenancy interest in the property* with the wife." Counsel continued, "[Defense] counsel has raised some questions about the *joint tenancy, because the wife is a joint-tenant* that the damage issue, that it didn't survive, it went to her. And I think we both . . . searched for cases on point. And I couldn't find any. [¶] And he's attempted to make an analogy between a condemnation action, which I just don't see. That's a transfer of interest in property. And the court said in that case that the condemnation funds went to the purchaser in the absence of some retention in the deed that they would stay with the seller. [¶] And that's very much different than a *joint tenancy.* We are talking about the passing of an interest in property." (Italics added.) Similarly, counsel submitted points and authorities to the court below assuming and conceding the joint tenancy character of the property.

Under these circumstances, counsel may not belatedly assert that this fact, which was effectively conceded by appellant below, and which was assumed to be the case in all subsequent actions here and below, is unsupported in the record.

within five years after it was filed. All other defendants joined in the County's motion.

Prior to the hearing on the motion, Polly Ferk had undergone heart surgery and was confined to Letterman Hospital. At the time of the hearing she was still recovering from the surgery and was unable to attend the proceedings. Her views were conveyed to the court by way of declaration.

The declaration stated that LeRoy Ferk "had been seriously ill for almost all of the time since this action was filed, until his death on May 7, 1987;" he had been hospitalized in the fall of 1981 for surgery; since 1981, he had been hospitalized many times for illness; when he was not hospitalized Polly Ferk had cared for him at home; from August 1985 until 1987, he was confined to a convalescent hospital; because of the seriousness of his illness, LeRoy Ferk was physically incapable of proceeding with the action or handling his own affairs; Polly Ferk had been preoccupied with his health and welfare, and therefore did not proceed further with the action; and no personal representative had been appointed for LeRoy Ferk's estate.

On August 3, 1987, the court heard the motion, struck the declaration of attorney Mezzetta and portions of Polly Ferk's declaration averring that in December 1981, LeRoy Ferk had been diagnosed as having congestive heart failure, class 4, and that because of his illness, he had been incapable of proceeding with the action. The court then granted the motion to dismiss. An order dismissing the action was entered on August 11, 1987. A timely notice of appeal followed.

## DISCUSSION

### I.

*Whether the Death of LeRoy Ferk on May 7, 1987, Suspended the Court's Jurisdiction and Tolled the Five-year Dismissal Statute*

Code of Civil Procedure, section 583.310 provides: "An action shall be brought to trial within five years after the action is commenced against the defendant." Dismissal for noncompliance with the five-year limit is "mandatory . . . except as expressly provided by statute." (Code Civ. Proc., § 583.360, subd. (b).) ■ Section 583.340 provides for tolling of the statute for the time during which "[t]he jurisdiction of the court to try the action was suspended" (§ 583.340, subd. (a)) or "[b]ringing the action to trial, for any other reason, was impossible, impracticable, or futile."

(§ 583.340, subd. (c)).[2] This codifies existing case law. (Cal. Law Revision Com. com., Deering's Ann. Code Civ. Proc., § 583.340 (1988 pocket supp.) p. 100.) Subdivision (c) "must be interpreted liberally, consistent with the policy favoring trial on the merits." (*Ibid.*) It recognizes that bringing an action to trial "may be impossible, impracticable or futile due to factors not reasonably within the control of the plaintiff." (*Ibid.*)

■ Appellant contends the five-year statute has been tolled since May 7, 1987, the date LeRoy Ferk died. She argues, "upon the death of either party the five year period during which an action may be prosecuted is tolled until a personal representative is appointed on the theory that the court's jurisdiction is suspended during that period."

It is true that *Pham* v. *Wagner Litho Machinery Co.* (1985) 172 Cal.App.3d 966 [218 Cal.Rptr. 476], holds that the period of time between the plaintiff's death and the substitution of the personal representative in her place was not to be included in calculating the five-year period during which the action must be brought to trial. (*Id.,* at p. 972.) The court concluded that under the predecessor to Code of Civil Procedure, section 583.340, subdivision (a) (former § 583, subd. (f)), the court's jurisdiction was suspended during the period between the plaintiff's death and the appointment and substitution into the action of the administrator of the estate. Further, the appellate court in *Pham* relied upon the statutory exception where bringing the action would have been " 'impossible, impracticable or futile due to causes beyond a party's control . . . .' " (*Id.,* at p. 972, quoting former § 583, subd. (f).) The court reasoned, "[s]ince the authority of retained counsel generally does not survive the death of his client [citation], plaintiff's death here left no person or entity to prosecute the underlying action on her behalf, and any proceedings taken in the absence of her personal representative would have been subject to being declared void. [Citation.] It was during this period of temporary impracticability and futility that subdivision (f) operated to toll the five-year statute." (*Id.,* at pp. 972-973.) The appellate court refused to determine whether the statute operated to allow infinite tolling until the actual appointment and substitution into the action by the administrator, or only for that period during which it was impracticable or futile to bring a case to trial, concluding that the appellant was entitled to relief under either approach. (172 Cal.App.3d at pp. 973-974.)[3]

---

[2] Section 583.340 provides in its entirety: "In computing the time within which an action must be brought to trial pursuant to this article, there shall be excluded the time during which any of the following conditions existed: [¶] (a) The jurisdiction of the court to try the action was suspended. [¶] (b) Prosecution or trial of the action was stayed or enjoined. [¶] (c) Bringing the action to trial, for any other reason, was impossible, impracticable, or futile."

[3] The court recognized that the former approach could result in a lengthy delay, "frustrat[ing] the very purpose of [the statute]." (172 Cal.App.3d at pp. 973-974.)

Nevertheless, we are convinced that the trial court in this case did not lose jurisdiction (in either the fundamental sense or the broad sense discussed in *Pham*) upon the death of LeRoy Ferk. The real property was held in joint tenancy. Upon the death of LeRoy Ferk, the property passed through right of survivorship to Polly Ferk as the surviving joint tenant. The property was never a part of LeRoy Ferk's estate. So, too, we believe the cause of action against defendants for injunctive relief and for damages to that real property was a joint tenancy asset and upon the death of LeRoy, it passed to Polly. The parties concede they could find no case precisely on point. ■ However, it is well established that "the proceeds of joint tenancy property, in the absence of contrary agreement, retain the character of the property from which they were acquired. (*Fish* v. *Security-First Nat. Bank,* 31 Cal.2d 378 . . . .)" (*Estate of Zaring* (1949) 93 Cal.App.2d 577, 580 [209 P.2d 642].)

Treatment of a condemnation award as proceeds of property held in joint tenancy provides an apt analogy. In *People* v. *Nogarr* (1958) 164 Cal.App.2d 591, 593 [330 P.2d 858, 67 A.L.R.2d 992], husband and wife acquired certain real property as joint tenants. They later separated and husband mortgaged the property. Husband died, and the state thereafter commenced proceedings to condemn the property. The appellate court held that execution of the mortgage by the husband did not sever the joint tenancy. The mortgage lien expired when the husband's interest ceased. Therefore, upon the death of her husband, the wife became the sole owner of the property and "under the doctrine of equitable conversion of the entire award in condemnation . . . ." (*Id.,* at p. 594.)

Appellant urges that the present case is more like *Russell* v. *Williams* (1962) 58 Cal.2d 487 [24 Cal.Rptr. 859, 374 P.2d 827], in which it was held that a surviving joint tenant, the ex-wife, had no claims to the proceeds of a fire insurance policy covering improvements on the joint property, where the policy was issued to the husband and paid for by his separate property funds, and the loss occurred before his death. The court reasoned that there was no obligation on the part of a cotenant to insure the other cotenant against loss of the latter's interest. ■ Since a fire insurance policy does not insure the property, but indemnifies the particular insured for damage to his interest, a noninsuring cotenant is not entitled to any part of the proceeds paid to the insuring cotenant. (*Id.,* at p. 492.) We find the insurance proceeds analogy inapposite. It is true that a cotenant in Polly Ferk's position may insure the property, recovering for damage to the entire property; however, if a cotenant sues alone for damages resulting from injury to the property, he can only recover his proportionate interest, not the entire amount of damage. (*Razzano* v. *Kent* (1947) 78 Cal.App.2d 254, 258 [177 P.2d 612], cited in 4 Witkin, Summary of Cal. Law (1987 9th ed.) Real

Property, § 268, p. 468.) ▮▮ Further, no separate property funds were expended here and no separate contract was involved. The joint tenants jointly initiated the action for damages to their joint property.

The death of the joint tenant did not result in the loss of jurisdiction by the trial court in this case. ▮▮ This is consistent with cases holding that where one party acquires the interest of his coplaintiff during the litigation, there is neither reason nor statutory requirement that the surviving owner of that interest shall again be made a party to the action in order that he may represent his own interest in the litigation. (See *Union Bank* v. *County of Los Angeles* (1963) 223 Cal.App.2d 687, 690 [35 Cal.Rptr. 870]; *Miller* v. *Bank of America* (1942) 52 Cal.App.2d 512, 516 [126 P.2d 444].) "By his death, the deceased party to the litigation is merely eliminated therefrom. The court does not thereby lose jurisdiction of the subject-matter. The surviving joint owner of the property, under the circumstances of this case, has merely increased his holdings to include the entire property. It is therefore unnecessary that [the surviving joint owner] should be substituted to enable him to continue the litigation." (*Miller* v. *Bank of America, supra,* at pp. 516-517.)

▮▮ Upon the death of LeRoy his entire interest in the lawsuit passed to Polly. It did not become part of his estate. Consequently, appointment of a personal representative to carry on the suit would have been inappropriate as the estate had no interest to pursue. Polly has always been a party to the suit and jurisdiction of the court was never suspended.[4]

---

[4] When he died, LeRoy's cause of action neither abated nor extinguished but simply merged with Polly Ferk's claim upon transfer of the property to her. Code of Civil Procedure, section 385, subdivision (a), provides: "An action or proceeding does not abate by the death, or any disability of a party, or by the transfer of any interest therein, if the cause of action survives or continues. In case of the death or any disability of a party, the court, on motion, may allow the action or proceeding to be continued by or against his or her representative or successor in interest. In case of any other transfer of interest, the action or proceeding may be continued in the name of the original party, or the court may allow the person to whom the transfer is made to be substituted in the action or proceeding."

Arguably, under this statute, this appeal could continue in LeRoy Ferk's name; however, it is clear that his estate has no appealable interest. Even if his estate had an interest in the action, no personal representative substituted into this action to represent the estate on appeal. Consequently, this appeal must be dismissed as to LeRoy Ferk. Polly Ferk alone retains the right to maintain this appeal.

## II.

*Whether the Court Abused Its Discretion in Refusing to Apply the Statutory Exception of Code of Civil Procedure Section 583.340, Subdivision (c)*

■ The question remains as to whether the illness and death of LeRoy Ferk and Polly Ferk's involvement in his care rendered it "impossible, impracticable, or futile" to bring the lawsuit to trial within five years. We are aware that the bare fact of severability of Polly Ferk's claim from that of her husband's does not preclude a successful claim of impracticability. Although it is a threshold issue, it is not determinative. (*Brunzell Construction Co.* v. *Wagner* (1970) 2 Cal.3d 545 [86 Cal.Rptr. 297, 468 P.2d 553].)
■ "The exception's purpose is to limit the harshness of section 583's sanction in all situations where a mechanical operation of the statute would produce injustice, not merely to prevent a defendant from profiting from delay occasioned by his own activities. . . . [T]he focus of the exception is on the 'justifiability' of the plaintiff's reason for not bringing the case to trial, rather than on the defendant's complicity in the delay." (*Id.,* at p. 555.)[5]

"Since the judicial construction of the 'impossible, impracticable or futile' exception to section 583, the courts have applied it on a case-by-case basis to prevent patently unjust consequences where the failure to comply with the statute is not attributable to fault on the part of the plaintiff or his counsel. [Citations.]" (*Lewis* v. *Superior Court* (1985) 175 Cal.App.3d 366, 375 [220 Cal.Rptr. 594].)

■ Appellant relies upon *Him* v. *Superior Court* (1986) 184 Cal.App.3d 35 [228 Cal.Rptr. 839], to argue that her husband's illness excused the delay in bringing the action to trial. In *Him,* the appellate court held the trial court had not abused its discretion in denying defendant's motion to dismiss the lawsuit for failure to bring the action to trial within five years, where plaintiff's counsel had become seriously ill less than three months before the running of the five years; but the trial court had erred in denying the motion to specially set the matter for trial, since Code of Civil

---

[5] We reject appellant's charge that the County's conduct in failing to answer the cross-complaint prevented the case from being at issue and thus rendered it impossible or impracticable to bring the matter to trial. The argument overlooks the fact that no discovery was pursued, and no attempt was made by the Ferks to bring the case to trial by moving for preference and seeking to file an at-issue memorandum until the five-year period had expired. We focus, as we must, upon the plaintiffs' diligence, not upon defendants' contribution, if any, to the delay. Moreover, as provided in rule 209 (a), of the California Rules of Court, "a case may be considered at issue notwithstanding any cross-complaint that is not at issue if the cross-complaint has been on file for six months or more."

Procedure, section 583.350 extends the five-year period for six months whenever the time remaining at the end of a period of tolling is less than six months. According to the court: "[T]he existence of impracticability is 'determined in light of all the circumstances in the individual case, including the acts and conduct of the parties and the nature of the proceedings themselves. [Citations.] The critical factor in applying [the exception] to a given factual situation is whether the plaintiff exercised reasonable diligence in prosecuting his or her case.' (*Moran* v. *Superior Court* (1983) 35 Cal.3d 229, 238 . . . [Citation].) The law applicable to the instant case, properly stated, is that '[d]elay attributable to sickness or death of counsel . . . is not *necessarily* excusable. Each case must be decided on its own peculiar features and facts. [Citation.]' [Citation; italics supplied.]" (*Him* v. *Superior Court, supra,* at p. 39.) The appellate court evaluated the facts of the case by the "reasonable diligence" standard delineated in *Moran* v. *Superior Court* (1983) 35 Cal.3d 229 [197 Cal.Rptr. 546, 673 P.2d 216] and codified in subdivision (c) of section 583.340. It concluded that defendant had "failed to meet the burden of showing that the respondent [court] abused its discretion in determining the five-year statute was tolled for counsel's illness. The respondent necessarily found that under all of the circumstances petitioner's conduct was sufficiently diligent to warrant the application of the impracticability exception to excuse his failure to bring the case to trial within the five-year limit, and we find no abuse of discretion in such finding." (184 Cal.App.3d at p. 39.)

In this case, the trial court determined that appellant had not demonstrated that the exception should apply. It is apparent that the Ferks were not diligent in pursuing this lawsuit. "*Moran* stressed the sine qua non of the exceptions is reasonable diligence by the plaintiff in prosecuting the case. (*Moran* v. *Superior Court, supra,* 35 Cal.3d at p. 238.)" (*Hill* v. *Bingham* (1986) 181 Cal.App.3d 1, 10 [225 Cal.Rptr. 905].)

LeRoy Ferk's continuing ill health did not prevent the Ferks from commencing this lawsuit and thereafter filing an amended complaint. It was only when the Ferks substituted themselves in propria persona for counsel that the action came to a standstill. Polly Ferk's understandable preoccupation with her husband's health during the five-year period cannot excuse her failure to obtain counsel or otherwise act. Her lack of attention is underscored by the fact that she took no further action in the cause even after 1985, when LeRoy entered a rest home and, presumably, his physical care became less burdensome to her. Absolutely no showing has been made of diligence sufficient to require the trial court to apply the exception of Code of Civil Procedure, section 583.340.

We are reminded that the purpose of the five-year statute is twofold: first, like a statute of limitations, Code of Civil Procedure, section 583.310

seeks " 'to discourage stale claims "to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared." [Citations.] Secondly, the dismissal section is designed to compel reasonable diligence in the prosecution of actions, thereby expediting the administration of justice.' (*Dunsmuir Masonic Temple* v. *Superior Court* (1970) 12 Cal.App.3d 17, 22-23 . . . .)" (*Minkin* v. *Levander* (1986) 186 Cal.App.3d 64, 73 [230 Cal.Rptr. 592].)

"Although we recognize that justice generally is better served when cases are heard on the merits, we also recognize that, in some instances, justice will be better served by the dismissal of an action." (186 Cal.App.3d at p. 73.) We are convinced the trial court here acted within the limits of its discretion in dismissing this lawsuit.

The appeal is dismissed as to LeRoy Ferk. The judgment of dismissal is affirmed as to Polly Ferk.

Smith, J., and Pollak, J.,* concurred.

---

* Assigned by the Chairperson of the Judicial Council.