[No. B039288. Second Dist., Div. Seven. Apr. 23, 1990.]

WESLEY G. MESLER, Plaintiff and Appellant, v.
BRAGG MANAGEMENT COMPANY, INC., Defendant, Cross-complainant and Respondent;
INDUSTRIAL PARTS DEPOT, INC., Cross-defendant and Respondent.

COUNSEL

Wylie A. Aitken and Steven J. Wilson for Plaintiff and Appellant.

Pray, Price, Williams & Russell and Jay H. Picking for Defendant, Cross-complainant and Respondent.

O'Rourke, Stafford & Allan and Todd A. Chamberlain for Cross-defendant and Respondent.

OPINION

WOODS (Fred), J.—Appeal from an order and judgment of dismissal by the Los Angeles County Superior Court, the Honorable Frank Baffa presiding. Affirmed.

I.

INTRODUCTION

A more detailed presentation of the facts and proceedings in this matter is set forth in part III under "Factual and Procedural Synopsis." Since the contentions involve proceedings in three courts, i.e., the superior court, the Court of Appeal and the Supreme Court, we deem it advisable to give an expansive introduction for orientation purposes.

The appeal is taken from the November 28, 1988, judgment of dismissal of the Los Angeles County Superior Court pursuant to the "mandatory" provisions of California Code of Civil Procedure[1] sections 583.320[2] and 583.360,[3] which followed a hearing on the noticed motion of defendant/respondent Bragg Management Company, Inc. (Bragg). Cross-defend-

---

[1] All statutory references herein are to the Code of Civil Procedure unless otherwise noted.

[2] Section 583.320 provides in pertinent part: "(a) If a new trial is granted in the action the action shall again be brought to trial within the following times: . . . [¶] (3) *If on appeal* an order granting a new trial is affirmed or *a judgment is reversed and the action remanded for a new trial, within three years after the remittitur is filed by the clerk of the trial court. . . .*" (Italics added.)

[3] Section 583.360 provides: "(a) An action shall be dismissed by the court on its own motion or on motion of the defendant, after notice to the parties, if the action is not brought to trial within the time prescribed in this article. [¶] (b) The requirements of this article are *mandatory* and are not subject to extension, excuse, or exception except as expressly provided by statute." (Italics added.)

ant and cross-complainant, Industrial Parts Depot, Inc. (IPD), claims to have joined in Bragg's motion to dismiss.[4]

Mesler's action originated from an accident which occurred on July 31, 1979, while Wesley G. Mesler was operating a bulldozer on the premises of Mobil Oil Refinery in the City of Torrance, California, resulting in personal injuries and related damages.

Bragg had previously obtained summary judgment in the trial court when Bragg was sued as a fictitious defendant (Doe I) following discovery in the action which led Mesler to believe that Bragg was exposed to liability on an "alter ego" theory. However, Mesler failed to allege "alter ego" liability in his complaint, and the superior court entered summary judgment in favor of Bragg. Division Five of this court affirmed the summary judgment in Bragg's favor. The Supreme Court reversed, finding that the trial court abused its discretion in entering summary judgment without granting Mesler's request for leave to amend his complaint to allege an "alter ego" theory of liability.

This appeal concerns proceedings in the trial court, after reversal, during which the court denied Mesler's motion to specially set the matter for trial and dismissed the case for failure to bring the matter to trial within three years after the clerk of the superior court filed the remittitur of reversal by the California Supreme Court.

## II.

### APPELLANT'S CONTENTIONS

Mesler contends that the trial court abused its discretion in denying his motion to specially set his case for trial and in granting Bragg's motion to dismiss for the following reasons: (1) the finding of the trial court that the date of September 9, 1988, was the expiration date of the three-year period for bringing the case to trial after reversal by the Supreme Court was contrary to all the evidence submitted to it in that the three-year date could not have expired any earlier than October 2, 1988; and (2) the case was prosecuted diligently, and any failure to bring the case to trial any earlier is solely due to the superior court's [clerk's] errors.

We find no merit in any of Mesler's contentions for the reasons hereafter discussed.

---

[4] Neither this joinder nor IPD's cross-complaint are part of the record before this court.

## III.

### FACTUAL AND PROCEDURAL SYNOPSIS

Mesler filed his complaint for personal injuries suffered by him on the date of July 31, 1979, on January 14, 1980, approximately 10 years ago. No alter ego theory of liability against any defendant was alleged.

Following formal discovery, Mesler discerned facts which led him to believe that liability against Bragg,[5] on a theory of alter ego, was justifiable.

On April 29, 1982, Mesler amended his complaint and named Bragg as a fictitious defendant (Doe 1). The amendment was subsequently filed on May 3, 1982. Bragg filed its answer to Mesler's complaint on May 24, 1982.

On March 7, 1983, Bragg noticed a motion for summary judgment. The motion was heard and granted on April 6, 1983. Mesler opposed the motion and raised an alter ego theory of liability against Bragg although facts sufficient to support an alter ego theory of liability had not been pled. Mesler requested leave of court to amend his complaint to allege liability based upon an alter ego theory, which the trial court denied.

On June 8, 1983, Mesler filed his notice of appeal from the summary judgment. Division Five of this court affirmed the summary judgment and denied appellant's petition for rehearing.

On Mesler's appeal to the California Supreme Court, the court held, inter alia, that the trial court had abused its discretion in denying Mesler's request for leave to amend his complaint to allege alter ego as a theory of liability and reversed the summary judgment in favor of Bragg.

The remittitur from the California Supreme Court was dated September 5, 1985. Copies were served by mail on all parties and a copy was forwarded to the trial court for filing. The register of actions[6] maintained by the clerk

---

[5] Cross-defendant and cross-complainant, IPD, was not a named defendant in Mesler's action in the trial court. Respondent Bragg cross-complained against IPD on a theory of equitable indemnity. IPD is supportive of the dismissal obtained by Bragg in the trial court, and on this appeal, since failure of Mesler's action against Bragg will moot any claim to equitable indemnity by Bragg against IPD.

[6] Government Code section 69845 provides: "The clerk of the superior court may keep a register of actions in which shall be entered the title of each cause, with the date of its commencement and *a memorandum of every subsequent proceeding in the action with its date.*" (Italics added.)

of the superior court contains an entry that the remittitur was filed on September 9, 1985.[7]

On July 16, 1986, Mesler filed a motion to reinstate his at-issue memorandum since his at-issue memorandum filed in April of 1986 had been found defective by personnel of the trial court. Mesler then arranged to have his motion to reinstate his at-issue memorandum taken off calendar.

On September 18, 1987, the court granted Mesler's motion for leave to file an amended complaint. On October 19, 1987, Bragg answered the amended complaint. On October 21, 1987, Mesler again filed an at-issue memorandum.

Mesler's motion to specially set his case for trial was filed on July 29, 1988, and set for hearing on August 18, 1988. Mesler filed his motion to specially set the case for trial on the grounds that the three-year statute of limitations contained in Code of Civil Procedure section 583.320 was about to expire and that the case must be brought to trial "within three years after the Remittitur was filed by the clerk of the Superior Court, to wit: September 5, 1988."[8]

Bragg opposed the motion to specially set the case for trial and brought a concurrent motion to dismiss the action for failure to bring the case to trial in a timely manner, after reversal, pursuant to section 583.420, subdivision (a)(3)(C) providing for a *discretionary* two-year dismissal and section 583.320, subdivision (a)(3) providing for a *mandatory* three-year dismissal.

At the hearing of August 18, 1988, the trial court denied Mesler's motion to specially set the case for trial and took the countermotion of Bragg to dismiss the action under submission until September 9, 1988, indicating a tentative decision to dismiss the action under the three-year mandatory dismissal section as opposed to the two-year discretionary dismissal section. In Mesler's opposition to Bragg's motion to dismiss, filed on August 15,

---

[7] As hereafter discussed, Mesler disputes the September 9, 1985, filing date of the remittitur in the superior court on the grounds that his counsel was unable to locate the remittitur in the superior court file, after retrieval of the file from storage after having been mistakenly delivered there by court personnel.

[8] Contained in Bragg's opening brief and uncontested in Mesler's reply brief, are additional items of history in the case. After the grant of summary judgment by the trial court, Mesler proceeded to trial in June of 1983 with the remaining defendants, Mobil Oil Corporation, Great Lakes Carbon Corporation, and Caterpillar. During jury deliberation, the case was settled as to Mobil Oil Corporation and Great Lakes Carbon Corporation for $250,000, bringing the total received from all defendants to $305,000 by way of settlement. After settlement with Mobil Oil Corporation and Great Lakes Carbon Corporation, the jury returned a verdict in favor of the remaining defendants.

1988, Mesler includes an attorney's declaration stating that the court had lost or misfiled the Supreme Court's remittitur and the at-issue memorandum filed on October 21, 1987.

After Mesler obtained an order shortening time to give notice, the court heard a motion for reconsideration by Mesler on September 8, 1988, founded on Mesler's claim that he had discovered additional facts indicating that September 9, 1988, could not be the applicable statute of limitations and that court personnel had failed to file the remittitur from the Supreme Court and had failed to file Mesler's at-issue memorandum since both were missing from the file after obtaining the file from storage.

Mesler contends that these nonfilings combined to deprive him of a trial date well within the three-year period set forth in section 583.320, subdivision (a)(3).

Mesler's counsel served unsigned declarations of three court personnel on opposing counsel on the morning of the hearing on his petition for reconsideration and placed under subpoena three personnel of the court, who testified that the information contained in their unsigned declarations was true and correct.

The court heard the reconsideration motion and allowed its prior ruling to stand and kept under submission Bragg's motion to dismiss the action.

By order of this appellate division seven dated September 21, 1988, we denied Mesler's petition for writ of mandate and request for stay of proceedings on grounds that Mesler's remedy at law was adequate.

On November 28, 1988, the trial court entered its judgment of dismissal pursuant to the *mandatory* three-year statute contained in sections 583.320 and 583.360.

Mesler filed a timely appeal.

## IV.

### DISCUSSION

A. *Scope of review.*

 A reviewing court may not disturb the exercise of discretion by a trial court in the absence of a clear abuse thereof appearing in the record. (*Denham* v. *Superior Court* (1970) 2 Cal.3d 557, 566 [86 Cal.Rptr. 65, 468

P.2d 193].) Unless a reviewing court is capable of saying that a *clear abuse* of discretion is made to appear, it will not divest the trial court of the discretionary power reposed in it. (*Miller v. Republic Grocery, Inc.* (1952) 110 Cal.App.2d 187, 190-191 [242 P.2d 396].)

■ On appeal, there is a presumption in favor of the actions of the trial court to the effect that its discretion was properly exercised, and the burden and responsibility is on the appellant to affirmatively establish an abuse of discretion. (110 Cal.App.2d 187, 190-191.) Rulings on *motions,* such as the motion to specially set for trial in this case, have been held to be matters lying within the discretion of the trial court, whose determination will not be disturbed on appeal absent a showing of an abuse of discretion. (*Coviello v. Moco Fruit Co., Inc.* (1941) 42 Cal.App.2d 637, 639 [109 P.2d 765].)

Similarly, proceedings on motions to dismiss are within the general rule as to presumptions and will be presumed regularly dismissed unless the record shows to the contrary. (*Allen v. California Water & Tel. Co.* (1946) 29 Cal.2d 466, 485 [176 P.2d 8].)

B. *Burden in the trial court on a motion to preferentially set for trial under Code of Civil Procedure section 36, subdivision (d).*

Former Code of Civil Procedure section 36, subdivision (d), now subdivision (e), provides in its entirety as follows: "Notwithstanding any other provision of law, the court may in its discretion grant a motion for preference served with the memorandum to set or the at-issue memorandum and *accompanied by a showing of cause* which satisfies the court that the interest of justice will be served by granting such preference." (Italics added.)

Initially, it is noted that California Rules of Court, rule 375(b)[9] allows a party to make a motion in the trial court to specially set the case for trial after notice. ■ We interpret rule 375(b) as requiring notice to *all other parties.* The record in this instance is void of any notice having been given of the motion to specially set to counsel for cross-defendant and cross-complainant IPD.

Of paramount importance, however, is the lack of justification or excuse proffered by Mesler in the trial court for his delay in not taking measures until the 11th hour (22 days before expiration of the statutory period) to

---

[9] Rule 375(b) provides in pertinent part: "(b) Motions to . . . specially set cases for trial shall be made before the presiding judge or the presiding judge's designee. A motion . . . to specially set a case for trial shall not be granted, *except on notice,* the filing of a declaration showing good cause and the appearance by the moving party at the hearing on the motion." (Italics added.)

insure that the case would be brought to trial within the mandatory 3 years following remittitur by the California Supreme Court. The reasons given by Mesler for failure to take such measures are singularly unpersuasive as hereafter discussed.

> C. *Appellant failed to establish "good cause" sufficient to warrant granting of his motion for preferential trial setting.*

■ Although Mesler asserts that certain claimed errors committed by court personnel prevented him from getting to trial at an earlier date, we find little, if any, merit in Mesler's contentions.

Initially, we are unable to avoid noting Mesler's complete disregard of the requirements of rule 323 of the California Rules of Court, regarding the presentation of evidence at a law and motion hearing. Rule 323 provides: "Evidence received at a law and motion hearing *shall be by declaration and affidavit* and by request for judicial notice without testimony or cross-examination, except as allowed in the court's discretion for good cause shown or as permitted by local rule. *A party seeking permission to introduce oral evidence,* except for oral evidence in rebuttal to oral evidence presented by the other party, *shall file, no later than three court days before the hearing, a written statement setting forth the nature and extent of the evidence proposed to be introduced* and a reasonable time estimate for the hearing. When the statement is filed less than five court days before the hearing, the filing party shall serve a copy on the other parties in a manner to assure delivery to the other parties no later than two days before the hearing." (Italics added.)

However, without complying with rule 323, at the hearing on Mesler's motion for a preferential trial setting, Mesler's counsel argued as follows: "I believe your Honor is aware that the reason we filed the motion to specially set was because it became apparent to us, too, that our file did not contain a conformed copy of the remittitur from the Supreme Court, which would indicate, as the court's aware, the exact three year date under which we must prosecute and bring this case to trial. [¶] Accordingly, we searched the archives downtown and spoke with deputy clerk Connie Davis, and we were allowed to view the file in department—and it turned out that the court file does not contain a filed copy of the remittitur either. [¶] For that reason, we filed a motion to specially set in an effort to get a ruling as to the date within which we must bring this case to trial."

■ Not until Mesler was faced with Bragg's countermotion to dismiss did Mesler make a semblance of partial compliance with rule 323 by filing an attorney's declaration in which counsel stated facts pertaining to the absence of the remittitur and the at-issue memorandum in the court's file.

In the declaration submitted by Mesler in opposition to Bragg's motion to dismiss, Mesler's counsel declared, among other things, as follows: "Plaintiff had [at] all times relied upon the Court's Docket Sheet which indicated the Remittitur was filed on August 21, 1986." (Admittedly the remittitur on an unrelated appeal in a cross-action.) However, the docket sheet or register of actions indicates that the remittitur from the Supreme Court was filed on September 9, 1985. Similarly, by Mesler's own admission by declaration filed in the trial court by his counsel, he received the remittitur from the Supreme Court on or about September 9, 1985. Indeed, in Mesler's motion to specially set the case for trial, he indicated that the expiration date for the three-year period was September 5, 1988, three years from the very date of issuance of the Supreme Court's remittitur. We find little, if anything, to commend the argument of Mesler that all evidence before the trial court would indicate a date other than September 9, 1985, as the filing date of the Supreme Court remittitur.

To the contrary, we find substantial evidence in the record to support the trial court's finding that the remittitur was filed on September 9, 1985, as indicated in the register of actions. A finding of any other date by the trial court would not have been supported by substantial evidence.

Mesler further contends that his "at issue memorandum" filed on October 21, 1987 (an entry date in the register of actions so indicates), was lost by the clerk of the court and, but for this event, he would have had a trial date in the summer of 1988 (well within the three-year period) according to the scheduling process then being followed by the court. Mesler's blaming of court personnel is somewhat strained by the fact that Mesler had previously set for hearing on August 14, 1986, a motion to reinstate an earlier at-issue memorandum which had been rejected for defects by the clerk. Mesler unilaterally took the motion off calendar and allowed a lapse of time of approximately one year and one month to occur before filing of his current motion to reinstate his "lost" at-issue memorandum. However, we further find Mesler's argument to be completely strained by the fact that Mesler allowed a period of over two years to elapse following the filing of the Supreme Court's remittitur of reversal before he got around to amending his complaint to allege an alter ego theory of liability and filing a valid at-issue memorandum.

We find no abuse of discretion by the trial court in denying a preferential trial setting to Mesler pursuant to his motion heard just 22 days before expiration of the three-year mandatory period. As the court indicated at the hearing on Mesler's motion for reconsideration, the court had been assigned

50 cases, "over the five years,"[10] from central and other districts, and the court's calendar would not have allowed the matter to be set for trial.

We likewise find no error by the trial court in granting Bragg's motion to dismiss for failure to bring the case to trial within three years, since section 583.320 is *mandatory* in its requirement that the action "shall" again be brought to trial within three years.

By refusing to give credence to Mesler's argument that the personnel of the court are to blame for his failure to bring his case to trial within the mandatory three years, we are not advocating condonation of errors committed by court personnel in any degree whatsoever. ■ However, those errors which are readily ascertainable by the exercise of reasonable diligence by the litigants will not serve to excuse the litigants from sufficiently monitoring their case in the trial court to insure that the case is brought to trial within statutory time constraints. We further note that when a litigant is faced with a shorter statute of limitations (here three years) as compared with a longer statute, such as the five-year limit contained in section 583.310, the degree of diligence required in monitoring the case in the trial court is increased.

In *Karubian* v. *Security Pacific Nat. Bank* (1984) 152 Cal.App.3d 134 [199 Cal.Rptr. 295], the court discussed errors committed by court personnel. The Court of Appeal, Second District, Division Two, specifically noted: "The Supreme Court in *Moran*,[11] *supra*, neither addressed nor answered the question of whether a plaintiff, or his or her counsel, can be considered diligent in continuing to rely on official duty being performed after the passage of an amount of time sufficient to indicate to a reasonably knowledgeable attorney that official duty was *not* going to be performed and that the public official had obviously 'goofed.'

"It seems to us that, even under circumstances where reliance on the performance of official duty is initially justified, there comes a time when plaintiff can no longer be considered to be 'diligent,' and entitled to claim impossibility, impracticability or futility in moving the case forward, without at least taking some action to call the matter to someone's attention." (Original italics.) (*Id.* at p. 139.)

In conclusion, the court noted: "Plaintiffs' counsel, by a single phone call, letter or visit to the clerk's office subsequent to June of 1979, could have discovered the inactive status of the case in ample time to remedy the

---

[10] A reasonable inference is that the court was referring to the *mandatory* five-year period of section 583.310, within which to bring the action to trial after commencement.

[11] *Moran* v. *Superior Court* (1983) 35 Cal.3d 229 [197 Cal.Rptr. 546, 673 P.2d 216].

situation. It does not appear unreasonable or impracticable to require plaintiffs and their counsel to monitor their cases to the extent that the clerk's failure to issue a timely notice of eligibility to file a certificate of readiness will be detected in a reasonably prompt fashion." (152 Cal.App.3d at p. 140.)

We again note that in spite of the relatively short statutory time limit of three years, Mesler allowed a period of nine months to expire, after an effective at-issue memorandum was eventually filed by him, before becoming concerned with the fact that he had not received a notice of trial-setting conference.

As indicated in *Salas v. Sears, Roebuck & Co.* (1986) 42 Cal.3d 342, 346 [228 Cal.Rptr. 504, 721 P.2d 590], Justice Mosk writing for a unanimous Supreme Court reasoned: "In *Wilson v. Sunshine Meat & Liquor Co.* (1983) 34 Cal.3d 554 . . . we emphasized that a motion for a preferential setting raises the same issues for the trial court as a motion to dismiss for failure to prosecute pursuant to [former] section 583(a): ' "In passing upon the motion for an early and preferential setting, the court was not limited to a consideration of the single fact that the five-year period was about to expire but was required to view the total picture, including the dilatory action of the plaintiff, the condition of the court's calendar, the rights of other litigants, and the prejudice to the defendant resulting from the delay. [Citations.] The action of the court on such a motion is tantamount to action upon a motion to dismiss for failure to prosecute within the two-year period prescribed by section 583 of the Code of Civil Procedure; in each instance the motion is addressed to its sound legal discretion; the motivating factors in the exercise of that discretion would be pertinent to both motions; and its decision 'will be disturbed only in cases of manifest abuse.' " ' " (*Id.* at p. 346.)

As was correctly indicated by the trial court, the case is governed by *Salas.* We are cognizant that the *Salas* court was presented with a motion to specially set to avoid the consequences of the mandatory five-year statute within which to bring the case to trial vice a three-year statute as in this case. However, the principles as announced in *Salas,* should equally apply to such motions to specially set to avoid the consequences of the mandatory three-year statutes found in sections 583.320 and 583.360, with one augmentation. Under a shorter statute of limitations the burden on the litigant to demonstrate diligence in insuring that the matter will be brought to trial in a timely manner is increased. The motion in this instance brought 22 days before expiration of the 3-year mandatory period, does not satisfy the requirement of increased diligence as herein discussed. Considering the "totality of the circumstances," the trial court did not commit an abuse of

discretion in denying Mesler's 11th hour attempt to obtain a preferential trial setting, just 22 days before the 3-year limit would run.

Likewise, the court committed no error in subsequently dismissing the case pursuant to the mandatory requirements of section 583.320.[12]

## V.

### DISPOSITION

The judgment is affirmed. Costs of appeal to respondents.

Lillie, P. J., concurred.

**JOHNSON, J.**—I respectfully dissent.

The following facts are undisputed. This case was not brought to trial within three years after the remittitur was filed because the superior court clerk lost plaintiff's at-issue memorandum and, therefore, never processed the case toward trial. Plaintiff monitored the trial setting process in this case and, when he did not receive notice of a trial setting conference nine months after filing the at-issue memorandum, he questioned the court clerk about the status of the case. It was that inquiry which revealed the at-issue memorandum had been lost. If the at-issue memorandum had not been lost, the case would have been set for trial in the early summer of 1988, well within the three-year limit based on the finding the remittitur was filed on September 9, 1985.

Despite this evidence of impossibility and reasonable if not perfect diligence, I was about to sign the majority opinion denying appellant relief from the mandatory three-year dismissal rule. Then I reread for perhaps the 30th or 40th time the stock language acknowledging the statutory preference for the policy of trying a plaintiff's claim "on the merits" over the

---

[12] We appreciate and are sensitive to the reminder contained in the dissent that trials on the merits are preferred to dismissals on procedural grounds. Our sensitivity does not have its situs in the so called "empty platitudes" which the dissent detects in the lead opinion and in other decisions but in a desire to comply with the law as enacted by the people through their legislative representatives. But we are unable to discern that in fostering the public policy in favor of "trials on the merits" the Legislature intended to cast to the four winds a requirement of diligence on the litigants in pursuing that goal. Surely section 583.130 would not have been worded as follows if such were the case: "It is the policy of the state that a plaintiff shall proceed with *reasonable diligence* in the prosecution of an action . . . and the policy favoring trial or other disposition of an action on the merits are *generally* to be preferred over the policy that requires dismissal for failure to proceed with *reasonable diligence* in the prosecution of an action in construing the provisions of this chapter." (Italics added.)

policy of denying the plaintiff a trial because of insufficient diligence in the prosecution of the claim. (Code Civ. Proc., § 583.130.) Almost always, as here, this acknowledgement is followed by a finding that somehow the disfavored policy overrides the favored policy in the particular case because of the plaintiff's lack of diligence. I hasten to confess I have authored opinions in the past which followed this very pattern and have concurred in many others which did the same. Nevertheless, something in the instant case awakened a concern that this court and other appellate courts have only been paying lip service to the Legislature's clearly stated policy on behalf of the people of California that a trial on the merits is preferred over dismissal for lack of diligent prosecution. For this reason, I decided it would be worthwhile to take another look at the history and authority behind this policy.

When a defendant seeks dismissal of the plaintiff's suit for lack of prosecution two important, conflicting legal policies collide. On one hand, "a defendant is entitled to the weight of the policy underlying the dismissal statute, which seeks to prevent unreasonable delays in litigation. . . ." (*Denham* v. *Superior Court* (1970) 2 Cal.3d 557, 566 [86 Cal.Rptr. 65, 468 P.2d 193].) On the other hand, the plaintiff is entitled to the weight of the policy "which seeks to dispose of litigation on the merits rather than on procedural grounds." (*Ibid.*) For most of this century the right to choose which policy would take precedence belonged to the courts. As a result, each policy held sway for a time.

"From around 1900 until the 1920's the dismissal statutes were strictly enforced. Between the 1920's and the 1960's there was a process of liberalization of the statutes to create exceptions and excuses. Beginning in the late 1960's the courts were strict in requiring dismissal. . . . In 1970 the courts brought an abrupt halt to strict construction of dismissal statutes and began an era of liberal allowance of excuses . . . ." (Revised Recommendation Relating to Dismissal for Lack of Prosecution (June 1983) 17 Cal.Law Revision Com. Rep. (1984) pp. 910-911.) (Fns. omitted; hereafter cited as (LRC).)

In 1984, the Legislature took this policy choice away from the courts and decided "the policy favoring trial . . . of an action on the merits [is] generally to be preferred over the policy that requires dismissal for failure to proceed with reasonable diligence in the prosecution of an action . . . ." (Code Civ. Proc., § 583.130[1], added by Stats. 1984, ch. 1705, § 5.) Judging from recent opinions, however, trial and appellate courts have not gotten the message the debate is over, the question is decided. They have unilater-

---

[1] Unless otherwise indicated all future references are to the Code of Civil Procedure.

ally swung the pendulum back to the era of strict enforcement of the dismissal statutes. Many courts seem to assume section 583.130 is just an empty platitude designed to placate trial lawyers or that the exigencies caused by overcrowded court dockets justify mere lip service to the statute before they dismiss the action. Both assumptions are wrong.

The legislative history of section 583.130 demonstrates the Legislature was fully aware of the judicial record in applying the dismissal statutes, knew it was being asked to make a policy choice and deliberately included its policy choice favoring trial over dismissal when it revised the dismissal statutes in 1984.

The Legislature repealed the statutes governing dismissal for lack of prosecution in 1984 and replaced them with a new set of statutes whose purpose was "to clarify ambiguities in the law, to bring the statutes into conformity with case law interpreting them, and to reconcile discrepancies in the statutes and cases." (Sen. Com. Rep. on Sen. Bill No. 1366, p. 2.) The genesis of the revised dismissal law was the proposed legislation drafted by the California Law Revision Commission. (LRC at pp. 920-940.) In its recommendations published June 1983, the commission noted, "The [existing] statutes do not accurately state the exceptions, excuses, and existence of court discretion. The interrelation of the statutes is confusing. The state of the law is generally unsatisfactory, requiring frequent appellate decisions for clarification." (LRC at p. 910.) The commission undertook to rewrite the law on dismissal for failure to prosecute to remedy the defects it found in the existing statutory scheme. (*Ibid.*) The commission's proposal was introduced as Senate Bill No. 1366 by Senator Keene, Chair of the Senate Committee on Judiciary. Senate Bill No. 1366 tracked the commission's proposed legislation and was enacted with little change.

One innovation recommended by the commission was a statement of legislative policy on the subject of dismissal for lack of prosecution. The commission found a need for such a policy statement because: "Fluctuations in basic procedural policy are undesirable. Every policy shift generates additional litigation to establish the bounds of the law. The policy of the state towards dismissal for lack of prosecution should be fixed and codified, and *the dismissal statutes should be construed consistently with this policy.*" (LRC at p. 911, italics added.) In support of its recommendation for a fixed and codified policy, the commission cited the fluctuations in the courts' attitudes toward the policy of dismissal for lack of prosecution versus the policy of trials on the merits. (See discussion, *ante*, p. 997.)

Having explained the need for a consistent policy, the commission recommended a policy that favored trial on the merits over dismissal on procedural grounds.

"The Law Revision Commission believes that the current preference for trial on the merits over dismissal on procedural grounds is sound and should be preserved by statute. The proposed legislation contains a statement of this basic public policy." (LRC at p. 911.)

The commission's statement of policy, with minor change, became section 583.130 of the Code of Civil Procedure. In its comment accompanying proposed section 583.130 the commission noted, "Section 583.130 is new. It is consistent with statements in the cases of the preference for trial on the merits. See, e.g., [*Hocharian* v. *Superior Court* (1981) 28 Cal.3d 714, 621 P.2d 829, 170 Cal.Rptr. 790 . .; *General Ins. Co.* v. *Superior Court* (1975) 15 Cal.3d 449, 541 P.2d 289, 124 Cal.Rptr. 745 . . ; *Denham* v. *Superior Court* (1970) 2 Cal.3d 557, 468 P.2d 193, 86 Cal.Rptr. 65 . .; *Weeks* v. *Roberts* (1968) 68 Cal.2d 802, 442 P.2d 361, 69 Cal.Rptr. 305. . . ."] (LRC at p. 929, italics added.)

The report on Senate Bill No. 1366 prepared for the Senate Judiciary Committee also made clear the legislation would put the state on record as favoring trials on the merits over dismissals for failure to prosecute.

"This bill would state the public policy in favor of reasonable diligence in prosecution of an action, but would also assert that the policy favoring disposition on the merits is to be preferred over dismissal on procedural grounds." (Sen. Com. Rep. on Sen. Bill No. 1366, *supra*, at p. 3.) A similar analysis was prepared for the Assembly Judiciary Committee.

"[T]his bill would declare that it is the policy of this state that a plaintiff must proceed with reasonable diligence but that all parties must cooperate in bringing an action to trial and also that the policy favoring trial or disposition of an action on its merits is preferred over dismissing an action for failure to proceed with reasonable diligence in prosecution of an action." (Assem. Com. Rep. on Senate Bill No. 1366, p. 2.)

Clearly, the statement that California, as a matter of public policy, favors a trial on the merits over dismissal for failure to prosecute with reasonable diligence is not a mere platitude or just boilerplate language to be included in appellate court opinions. Judicial opinions scoffing at the policy favoring trial on the merits as a "trite truism" no longer reflect the will of the people, if they ever did. (See e.g., *Dunsmuir Masonic Temple* v. *Superior Court* (1970) 12 Cal.App.3d 17, 22 [90 Cal.Rptr. 405].) On the contrary, as the legislative history amply shows, the lawmakers were fully aware they were making a policy choice binding on the state courts favoring trial on the merits over dismissals for lack of prosecution. This policy choice was made clear in the committee reports on the bill. Furthermore, it is well-recognized

that when legislation is adopted substantially without change from the Law Revision Commission's proposal the commission's report reflects the Legislature's intent. (*Kizer v. Hanna* (1989) 48 Cal.3d 1, 12 [255 Cal.Rptr. 412, 767 P.2d 679]; and see *Sierra Nevada Memorial-Miners Hospital, Inc.* v. *Superior Court* (1990) 217 Cal.App.3d 464, 469 [266 Cal.Rptr. 50] (adopting commission comment on § 583.340, another provision of Sen. Bill No. 1366.)

Why then has it proved so difficult to convince courts section 583.130 means what it says? It may be because we are so caught up in the problem of trial court delay and attempts to reduce it, such as the so-called "Fast Track" program, the chance to strike a case from the docket is almost irresistible. Indeed I fully sympathize with the typical "Fast Track" judge and his or her case docket of up to a thousand cases as well as with the judges and administrators facing the overwhelming caseloads the rest of the court system is asked to bear.[2] But, the minute we allow our decisions to be controlled by statistics instead of statutes we abandon our role as judges and become bureaucrats in black robes.[3] Justice Black could have been writing about California's Fast Track program when he wrote this dissent in *Link* v. *Wabash Railroad Co.* (1962) 370 U.S. 626, 648-649 [8 L.Ed.2d 734, 748, 82 S.Ct. 1386]: "The Court seems to find some reason for holding that this plaintiff can be penalized without notice because of a program certain courts have adopted to end congestion on their dockets by setting down long-pending cases for trial. It is of course desirable that the congestion on court dockets be reduced in every way possible consistent with the fair administration of justice. But that laudable objective should not be sought in a way which undercuts the very purposes for which courts were created—that is, to try cases on their merits and render judgments in accordance with the substantial rights of the parties. Where a case has so little merit that it is not being prosecuted, a trial court can of course properly dispose of it under fair constitutional procedures. . . . When we allow the desire to reduce court congestion to justify the sacrifice of substantial rights of the

---

[2] The monthly workload summary of the Los Angeles County Superior Court shows an average of 700 Fast Track cases per judge as of April 1, 1990.

[3] Professor Judith Resnik, a noted authority on trial court procedure, has warned that "in the rush to conquer the mountain of work," the "managerial movement" in the courts "may be teaching judges to value their statistics, such as the number of case dispositions, more than they value the quality of their dispositions." (Resnik, *Managerial Judges* (1982) 96 Harv. L.Rev. 376, 380.) "[T]he claim that 'the more dispositions the better,' raises difficult valuation tasks; decisionmaking must be assessed not only quantitatively, but also qualitatively." (*Id.* at p. 422.) Professor Resnik has expressed concern over the development of a " 'bureaucratic' judiciary" (*id.* at p. 437), noting "the *rhetoric* of judging has shifted from discussions of the difficulties of adjudication to the need to increase case dispositions. . . . The volume of case dispositions (rather than the substantive law in general, the merits of a particular case, improved techniques for factfinding) has become the be-all and end-all . . . ." (Resnik, *Failing Faith: Adjudicatory Procedure in Decline* (1986) 53 U. Chi. L.Rev. 494, 534-535.)

litigants in cases like this, we attempt to promote speed in administration, which is desirable, at the expense of justice, which is indispensable to any court system worthy of its name."

What is it about this particular case that caused me to recoil from concurring in yet another dismissal and to seek an understanding of the statutory preference embodied in section 583.130? In one sense, it was for the very reason this case is so typical of the dismissals we have been upholding in recent years. It was the final straw. Yet, in another sense, this case piqued my interest because it dramatically illustrates just how far we have come in swinging the pendulum toward strict enforcement of the dismissal statutes.

The majority begins its discussion by treating this appeal as a review of trial court discretion. (Maj. opn., *ante,* at pp. 990-991.) It is not. Plaintiff's action was dismissed under the mandatory dismissal provisions of sections 583.320, subdivision (a)(3) and 583.360, subdivision (a), not under the discretionary dismissal provision of section 583.420, subdivision (a)(3)(c). Therefore, the question is whether the time period for bringing the action to trial should have been tolled for impossibility, impracticability, or futility. Accordingly, the standard for review of trial court discretion is inapplicable. (See *Gray* v. *Firthe* (1987) 194 Cal.App.3d 202, 210-211 [239 Cal.Rptr. 389].)

It is true, as the majority opinion points out, Mesler moved to specially set the case for trial and such motions are committed to the discretion of the trial court. (*Salas* v. *Sears, Roebuck & Co.* (1986) 42 Cal.3d 342, 345-346 [228 Cal.Rptr. 504, 721 P.2d 590].) But the majority opinion ignores the fact that if the court clerk had not lost Mesler's at-issue memorandum the case would have been set for trial within the three-year period and there would have been no *need* for a special setting. Furthermore, court congestion, the ground cited by the majority as justifying denial of the motion to specially set, is not a valid reason for denying plaintiff his day in court. (*Weeks* v. *Roberts* (1968) 68 Cal.2d 802, 807 [69 Cal.Rptr. 305, 442 P.2d 361]; *Biondi, Fleming & Gonzales* v. *Braham* (1990) 218 Cal.App.3d 842 [267 Cal.Rptr. 365].)

Mesler is correct in his contention it was impossible for him to bring his action to trial within the three-year period because the court clerk lost his at-issue memorandum and never put the case into the calendaring system. The undisputed evidence shows Mesler filed an at-issue memorandum in October 1987; the at-issue memorandum was lost by the clerk's office; but, "had the [at-issue memorandum] not been lost or mis-filed by this Court, the plaintiff would have had a Trial Setting Conference and a Trial Date as

early as the early summer, 1988," well within the three-year period even using September 5, 1985, as the filing date of the remittitur.

The majority not only ignores this undisputed evidence of impossibility, it criticizes Mesler for pointing the finger of blame at the clerk's office. (Maj. opn., *ante,* at p. 993.) According to the majority, the error by the clerk's office must be disregarded because in August 1986 Mesler took off calendar a motion to reinstate an earlier at-issue memorandum and allowed a year and a month to elapse "before filing his current motion to reinstate his 'lost' at-issue memorandum." (*Ibid.*) Instead of viewing the "total picture" (*Salas v. Sears, Roebuck & Co., supra,* 42 Cal.3d 342, 346), the majority is nit-picking. The facts show defendant did not answer Mesler's amended complaint until October 20, 1987. The very next day Mesler refiled his at-issue memorandum.

Mesler acted diligently under the circumstances in filing his at-issue memorandum the day after defendant filed an answer to the amended complaint and in following up on that at-issue memorandum. When he had not received notice of a status conference by July 1988, nine months after he filed his at-issue memorandum, he contacted the court clerk to find out the status of the case and, at that time, discovered the at-issue memorandum had been lost. Even before that, on July 29, 1988, Mesler moved to specially set the case for trial. Given the trial setting practices of the Los Angeles Superior Court, waiting nine months before inquiring about a status conference was not unreasonable. (Cf. *Nail v. Osterholm* (1970) 13 Cal.App.3d 682, 687-688 [91 Cal.Rptr. 908] [failure to make inquiry for 11 months not unreasonable in Stanislaus County 20 years ago].)

This is not to say Mesler's lawyer displayed *perfect* diligence. In hindsight, it is always possible to identify some step a plaintiff could have taken which he did not take which might have allowed him to get to trial earlier. Indeed I doubt there are very many cases prosecuted in the Los Angeles trial courts where the lawyers are *perfectly* diligent at *every* stage of the proceedings—and that includes those which reach trial in a timely fashion.

But perfect diligence is not the standard. In fact, the degree of diligence required is the variable most affected by the statutory preference for trials on the merits. Because of that statutory preference the degree of diligence which is to be found reasonable and sufficient is less than what would be required were there no such preference. Otherwise the statutory preference would have no practical effect. The Legislature clearly intended to adopt a policy which would insure a higher percentage of cases were tried on the merits. The only way that happens is if judges apply a more lenient standard of diligence in considering dismissal motions.

By any reasonable standard of diligence, Mesler's behavior during this litigation justified relief from the dismissal statute. Indeed any lack of diligence on his part pales by comparison with the lack of diligence demonstrated by the clerk's office in losing his "at-issue" memorandum. This is one of those "there but for the grace of God go I" kind of cases. The only difference between Mesler and thousands of other plaintiffs who did manage to get to trial in recent years is not that these others were more diligent. The explanation is that in these cases the clerk's office did *not* lose the plaintiffs' at-issue memoranda.

I submit it is not just plaintiffs—or the parties in general—who have a stake in allowing disputes to be resolved on the merits. The courts and our entire system of justice share that stake. And when the courts—after all, clerk's offices *are* part of the courts—foul up, they should not shift the blame and the cost to the parties.

Viewing the total picture of this case in light of the policy favoring trial on the merits over dismissal for failure to proceed with reasonable diligence, it was error to dismiss this action. Today's decision may satisfy the trial court's need to clear its docket; it does not satisfy society's need for justice.

Appellant's petition for review by the Supreme Court was denied July 11, 1990. Mosk, J., and Broussard, J., were of the opinion that the petition should be granted.